# EXHIBIT A

# CHAPTER 2

# PUBLIC AND PRIVATE SEWERS AND DRAINS

SECTION:

**10-2-1: Definitions**

**10-2-2: Use Required**

**10-2-3: Private Sewage Disposal**

**10-2-4: Building Sewers And Connections**

**10-2-5: Use Of Public Sewers**

**10-2-6: Inspectors**

**10-2-7: Penalty**

**10-2-1: DEFINITIONS:**
Unless the context specifically indicates otherwise, the meaning of terms used in this chapter shall be as follows:

BIOCHEMICAL OXYGEN DEMAND (BOD): The quantity of oxygen utilized in the biochemical oxidation of organic matter under standard laboratory procedures in five (5) days at twenty degrees centigrade (20°C), expressed in milligrams per liter.

BUILDING DRAIN: That part of the lowest horizontal piping of a drainage system which receives the discharge from soil, waste, and other drainage pipes inside the walls of the building and conveys it to the building sewer, beginning five feet (5') (1.5 m) outside the inner face of the building wall.

BUILDING SEWER: The extension from the building drain to the public sewer or other place of disposal, also called house connection.

COMBINED SEWER: A sewer intended to receive both wastewater and storm or surface water.

EASEMENT: An acquired legal right for the specific use of land owned by others.

ENGINEER: The City Engineer or the official performing functions of the City Engineer, or his authorized deputy, agent or representative.

FLOATABLE OIL: Oil, fat or grease in a physical state such that it will separate by gravity from wastewater by treatment in an approved pretreatment facility. Wastewater shall be considered free of floatable fat if it is properly pretreated and the wastewater does not interfere with the collection system.

GARBAGE: The animal and vegetable waste resulting from the handling, preparation, cooking, and serving of foods.

INDUSTRIAL USER OR IU: A source of indirect discharge.

INDUSTRIAL WASTES: The wastewater from industrial processes, trade or business as distinct from domestic or sanitary wastes.

MAY: Permissive (see definition of shall).

NATURAL OUTLET: Any outlet, including storm sewers and combined sewer overflows, into a watercourse, pond, ditch, lake, or other body of surface or ground water.

PERSON: Any individual, firm, company, association, society, corporation, or group.

pH: The logarithm of the reciprocal of the hydrogen ion concentration. The concentration is the weight of hydrogen ions, in grams, per liter of solution. Neutral water, for example, has a pH value of 7 and a hydrogen-ion concentration of 10-7.

PROPERLY SHREDDED GARBAGE: The wastes from the preparation, cooking, and dispensing of food that have been shredded to such a degree that all particles will be carried freely under the flow conditions normally prevailing in public sewers, with no particle greater than one-half inch ($^1/_2$") (1.27 cm) in any dimension.

PUBLIC SEWER: A common sewer controlled by a governmental agency or public utility.

SANITARY SEWER: A sewer that carries liquid and water carried wastes from residences, commercial buildings, industrial plants, and institutions together with minor quantities of ground, storm, and surface waters that are not admitted intentionally.

SEWAGE: The spent water of a community. The preferred term is wastewater.

SEWER: A pipe or conduit that carries wastewater or drainage water.

SHALL: Mandatory.

SLUG: Any discharge of water or wastewater which in concentration of any given constituent or in quantity of flow exceeds for any period of duration longer than fifteen (15) minutes more than five (5) times the average twenty four (24) hour concentration or flows during normal operation and shall adversely affect the collection system and/or performance of the wastewater treatment works.

STORM DRAIN/STORM SEWER: A drain or sewer for conveying water, ground water, subsurface water, or unpolluted water from any source.

SUSPENDED SOLIDS: Total suspended matter that either floats on the surface of, or is in suspension in water, wastewater, or other liquids, and that is removable by laboratory filtering as prescribed in "Standard Methods for the Examination of Water and Wastewater" and referred to as nonfilterable residue.

UNPOLLUTED WATER: Water of quality equal to or better than the effluent criteria in effect, or water that would not cause violation of receiving water quality standards and would not be benefitted by discharge to the sanitary sewers and wastewater treatment facilities provided.

WASTEWATER: The spent water of a community. From the standpoint of source, it may be a combination of the liquid and water carried wastes from residences, commercial buildings, industrial plants and institutions, together with any ground water, surface water and stormwater that may be present.

WASTEWATER FACILITIES: The structures, equipment, and processes required to collect, carry away, and treat domestic and industrial wastes and dispose of the effluent.

WASTEWATER TREATMENT WORKS: An arrangement of devices and structures for treating wastewater, industrial wastes, and sludge. Sometimes used as synonymous with "waste treatment plant", "wastewater treatment plant" or "water pollution control plant".

WATERCOURSE: A natural or artificial channel for the passage of water either continuously or intermittently. (Ord. 01-2016, 7-5-2016)

**10-2-2: USE REQUIRED:**

   A.   Prohibited Deposits: It shall be unlawful for any person to place, deposit or permit to be deposited in an unsanitary manner upon public or private property within the City, or in any area under the jurisdiction of said City, any human or animal excrement, garbage or other objectionable waste.

   B.   Prohibited Discharge: It shall be unlawful to discharge to any natural outlet within the City, or in any area under the jurisdiction of said City, any sanitary sewage, industrial wastes, or other polluted waters, except where suitable treatment has been provided in accordance with subsequent provisions of this chapter.

   C.   Privy, Septic Tank, Cesspool, Etc., Prohibited: Except as hereinafter provided, it shall be unlawful to construct or maintain any privy, privy vault, septic tank, cesspool or other facility intended or used for the disposal of wastewater.

   D.   Connection Required: The owner's of all houses, buildings or properties used for human occupancy, employment, recreation or other purpose, situated within the city and abutting on any street, alley or right of way in which there is now located or may in the future be located a public sanitary or combined sewer of the city, is hereby required at the owner's expense to install suitable toilet facilities therein, and to connect such facilities directly with the proper public sewer in accordance with the provisions of this chapter, within ninety (90) days after date of official notice to do so; provided, that said public sewer is within one hundred feet (100') of the property line. (Ord. 65-85, 6-3-1996)

**10-2-3: PRIVATE SEWAGE DISPOSAL:**

   A.   Public System Unavailable: Where a public sanitary or combined sewer is not available under the provisions of section 10-2-2 of this chapter, the building sewer shall be connected to a private sewage disposal system complying with the provisions of this section.

   B.   County Permit:

      1.   Required: Before commencement of construction of a private sewage disposal system, the owner shall first obtain a written permit signed by the county sanitarian.

      2.   Application; Additional Information: The application for such permit shall be supplemented by plans, specifications and other information as deemed necessary by the sanitarian.

      3.   Permit Becomes Effective: A permit for a private sewage disposal system shall not become effective until the installation is completed to the satisfaction of the engineer.

      4.   Inspections: The engineer shall be allowed to inspect the work at any stage of construction and, in any event, the applicant for the permit shall notify the engineer when the work is ready for final inspection and before any underground portions are covered. The inspection shall be made within forty eight (48) hours of the receipt of notice by the engineer.

   C.   Specifications: The type, capacity, location and layout of a private sewage disposal system shall comply with all recommendations of the department of public health of the state of Montana. No permit shall be issued for any private sewage disposal system employing subsurface soil absorption facilities where the area of the lot is less than fifteen thousand (15,000) square feet. No septic tank or cesspool shall be permitted to discharge to any public sewer or natural outlet.

   D.  Public System Becomes Available: At such time as a public sewer becomes available to a property served by a private sewage disposal system as provided in subsection 10-2-2D of this chapter, a direct connection shall be made to the public sewer in compliance with this chapter; and any septic tanks, cesspools and similar private sewage disposal facilities shall be abandoned and filled with suitable material.

   E.  Costs: The owner shall operate and maintain the private sewage disposal facilities in a sanitary manner at all times at no expense to the city.

   F.  Additional Requirements: No statement contained in this section shall be construed to interfere with any additional requirements that may be imposed by the health officer. (Ord. 65-85, 6-3-1996)

**10-2-4: BUILDING SEWERS AND CONNECTIONS:**

   A.  Permit Required: No unauthorized person shall uncover, make any connections with or opening into, use, alter or disturb any public sewer or appurtenance thereof without first obtaining a written permit from the engineer.

   B.  Classes Of Permits: There shall be two (2) classes of building sewer permits:

     1.  For residential and commercial service; and

     2.  For service to establishments producing industrial wastes.

   C.  Application: In either case, the owner or his agent shall make application on a special form furnished by the city. The permit application shall be supplemented by any plans, specifications, or other information considered pertinent in the judgment of the engineer. (Ord. 65-85, 6-3-1996)

   D.  Permit And Inspection Fee: A permit and inspection fee shall be levied as determined from time to time by the city council. (Ord. 65-85, 6-3-1996; amd. 2004 Code)

   E.  Costs And Expenses: All costs and expenses incident to the installation and connection of the building sewer shall be borne by the owner.

   F.  Indemnification: The owner shall indemnify the city from any loss or damage that may directly or indirectly be occasioned by the installation of the building sewer.

   G.  Separate Sewer Required; Exception: A separate and independent building sewer shall be provided for every building; except, where one building stands at the rear of another on an interior lot and no private sewer is available or can be constructed to the rear building through an adjoining alley, courtyard or driveway, the building sewer from the front building may be extended to the rear building and the whole considered as one building sewer, but the city does not and will not assume any obligation or responsibility for damage caused by or resulting from any such single connection aforementioned.

   H.  Old Building Sewers: Old building sewers may be used in connection with new buildings only when they are found, on examination and test by the engineer, to meet all requirements of this chapter.

   I.  Materials: The building sewer shall be constructed of materials as allowed by the plumbing codes and regulations of the state of Montana.

   J.  Specifications: The size, slope, alignment, materials of construction of all sanitary sewers, including building sewers, and methods to be used in excavating, placing of the pipe, jointing, testing, and backfilling the trench shall all conform to the requirements of the building and plumbing codes or other applicable rules and regulations of the city and the state of Montana. In the absence of suitable code provisions or in amplification thereof, the materials and procedures set forth in appropriate specifications of the ASTM and WPCF manual of practice No. 9 shall apply.

   K.  Elevation; Location; Slope: Whenever possible, the building sewer shall be brought to the building at an elevation below the basement floor. No building sewer shall be laid parallel to or within three feet (3') of any bearing wall which might thereby be weakened. The depth shall be sufficient to afford protection from frost. The building sewer shall be laid at uniform grade and in straight alignment insofar as possible. Changes in direction shall be made only with properly curved pipe and fittings.

   L.  Lifters: In all buildings in which any building drain is too low to permit gravity flow to the public sewer, sanitary sewage carried by such drain shall be lifted by approved artificial means and discharged to the building sewer.

   M.  Surface Runoff: No person shall make connections of roof downspouts, foundation drains, areaway drains, or other sources of surface runoff or ground water to a building sewer or building drain which in turn is connected directly or indirectly to a public sanitary sewer unless such connection is approved by the engineer and the Montana state department of health for purposes of disposal of polluted surface drainage.

   N.  Compliance Required: The connection of the building sewer into the public sewer shall conform to the requirements of the building and plumbing codes or other applicable rules and regulations of the city and the state of Montana, or the procedures set forth in appropriate specifications of the ASTM and the WPCF manual of practice No. 9. All such connections shall be made gastight and watertight and verified by proper testing. Any deviation from the prescribed procedures and materials must be approved by the engineer before installation. The connection of the building sewer into the public sewer shall be made at the "Y" branch, if such branch is available at a suitable location.

   O.  Inspection; Connection: The applicant for the building sewer permit shall notify the engineer when the building sewer is ready for inspection and connection to the public sewer. The connection shall be made under the supervision of the

engineer or his representative.

P.  Excavations [1] : All excavations for building sewer installation shall be adequately guarded with barricades and lights so as to protect the public from hazard. Streets, sidewalks, parkways and other public property disturbed in the course of the work shall be restored in a manner satisfactory to the city. (Ord. 65-85, 6-3-1996)

Notes

[1]   1. See title 8, chapter 4 of this code.

**10-2-5: USE OF PUBLIC SEWERS:**

  A.  Protection Of Sewage System: No person shall discharge or cause to be discharged any unpolluted water such as stormwater, surface water, ground water, roof runoff, subsurface drainage, or cooling water to any sewer; except, stormwater runoff from limited areas, which stormwater may be polluted at times, may be discharged to the sanitary sewer by permission of the engineer and the Montana Department of Environmental Quality.

  B.  Unpolluted Drainage: Stormwater and all other unpolluted drainage shall be discharged to such sewers as are specifically designated as combined sewers or storm sewers, or to a natural outlet approved by the engineer and the Montana Department of Environmental Quality. (Ord. 01-2016, 7-5-2016)

  C.  Prohibited Discharges: Except as hereinafter provided, no person shall discharge or cause to be discharged any of the following described waters or wastes to any public sewer:

    1.  Pollutants which create a fire or explosion hazard including, but not limited to, waste streams with a closed cup flashpoint of less than one hundred forty degrees Fahrenheit (140°F) or sixty degrees Celsius (60°C) using the test methods specified in 40 CFR 261.21. These wastes include, but are not limited to, gasoline, benzene, naphtha, fuel oil, etc., in solid, liquid or gaseous form.

    2.  Toxic or poisonous solids, liquids, or gases in sufficient quantity, either singly or by interaction with other wastes, to contaminate the sludge of any Municipal system, to injure or interfere with any sewage treatment process or equipment, constitute a hazard to humans or animals, create a public nuisance, or result in the pass through of inadequately treated wastes to receiving waters.

Each user which discharges any toxic pollutants which cause an increase in the cost of managing the effluent or the sludge of the City treatment works shall pay for such increased costs.

    3.  Solid or viscous substances in quantities or of such size capable of causing obstruction to the flow in sewers, or other interference with the proper operation of the wastewater facilities such as, but not limited to, ashes, cinders, sand, mud, straw, shavings, metal, glass, rags, feathers, tar, plastics, wood, unground garbage, whole blood, paunch manure, hair and fleshings, entrails, paper dishes, cups, milk containers, etc., either whole or ground by garbage grinders.

  D.  Harmful Materials/Substances: The following described substances, materials, waters and wastes shall be limited in discharges to Municipal systems to concentrations or quantities which will not harm either the sewers, the sludge of any Municipal system, the wastewater treatment process or equipment, will not have an adverse effect on the receiving stream, or will not otherwise endanger lives, limb, public property, or constitute a nuisance. The engineer may set limitations lower than the limitations established in the regulations below if, in his opinion, such more severe limitations are necessary to meet the above objectives. In forming his opinion as to the acceptability, the engineer will give consideration to such factors as the quantity of subject waste in relation to flows and velocities in the sewers, materials of construction for the sewers, the wastewater treatment process employed, capacity of the wastewater treatment plant, and other pertinent factors. The limitations or restrictions on materials or characteristics of waste or wastewaters discharged to the sanitary sewer which shall not be violated without approval of the engineer are as follows:

    1.  Wastewater having a temperature higher than one hundred fifty degrees Fahrenheit (150°F) (65°C).

    2.  Wastewater containing petroleum oil, nonbiodegradable cutting oils, or product of mineral oil origin.

    3.  Wastewater from industrial plants containing floatable oils, fat, or grease. (Ord. 65-85, 6-3-1996)

    4.  Any garbage that has not been properly removed by screen or shredded. Garbage grinders or screen systems may be required to connect sanitary sewers from homes, institutions, restaurants, hospitals, catering establishments, or similar places where garbage originates on the premises or when served by caterers. (Ord. 01-2016, 7-5-2016)

    5.  Any waters or wastes containing toxic or deleterious substances to such degree that any such material received in the composite wastewater at the wastewater treatment works exceeds the limits established by the engineer for such materials.

    6.  Any waters or wastes containing pollutants which result in the presence of toxic or obnoxious gases, vapors or fumes within the POTW in quantities which may cause acute worker health and safety concerns or public nuisance.

    7.  Any radioactive wastes or isotopes of such half life or concentration as may exceed limits established by the engineer in compliance with applicable State or Federal regulations.

    8.  Quantities of flow, concentrations, or both, which constitute a "slug" as defined herein.

    9. Waters and wastes containing substances which are not amenable to treatment or reduction by the wastewater treatment processes employed or are amenable to treatment only to such degree that the wastewater treatment plant effluent cannot meet the requirements of other agencies having jurisdiction over the receiving waters.

    10. Any water or wastes which, by interaction with other water or wastes in the public sewer system, release obnoxious gases, form suspended solids which interfere with the collection system, or create a condition deleterious to structures and treatment processes.

    11. Pollutants which cause corrosive structural damage to the POTW but in no case discharges with pH lower than 5.0 unless the POTW is specifically designed to accommodate such discharges.

    12. Any trucked or hauled wastes unless the POTW is designed to adequately treat the wastes and the facility has points designated for such discharges. (Ord. 65-85, 6-3-1996)

  E. Interceptors:

    1. Required: Grease, oil and sand interceptors shall be provided when, in the opinion of the engineer, they are necessary for the proper handling of liquid wastes containing floatable grease in excessive amounts, or any flammable wastes, sand and other harmful ingredients; except that such interceptors shall not be required for private living quarters or dwelling units.

    2. Type; Capacity: All interceptors shall be of a type and capacity approved by the engineer and shall be located on the exterior of the building whenever possible as to be readily and easily accessible for cleaning and inspection. (Ord. 01-2016, 7-5-2016)

    3. Construction: Grease and oil interceptors shall be constructed of impervious materials capable of withstanding abrupt and extreme changes in temperature. They shall be of substantial construction, watertight and equipped with easily removable covers which, when bolted in place, shall be gaslight and watertight. (Ord. 65-85, 6-3-1996)

    4. Maintenance: Where installed, all grease, oil and sand interceptors shall be maintained by the owner, at his expense, in continuously efficient operation at all times. The owner(s) shall be responsible for maintaining records of the dates and means of disposal which are subject to review by the City. Any removal and hauling of the collected materials not performed by owner(s) personnel must be performed by currently licensed waste disposal firms. (Ord. 01-2016, 7-5-2016)

  F. Review And Approval Required: The admission into the public sewers of any waters or wastes having: 1) a five (5) day biochemical oxygen demand greater than three hundred (300) parts per million by weight, 2) containing more than three hundred fifty (350) parts per million by weight of suspended solids, 3) containing any quantity of substances having the characteristics described above, or 4) having an average daily flow greater than two percent (2%) of the average daily sewage flow of the City, shall be subject to the review and approval of the engineer. (Ord. 65-85, 6-3-1996)

  G. Pretreatment: Industrial users will be required to abide by article A, "Pretreatment Regulations", of this chapter. Industrial users will be determined based on the information that may be requested in subsection L of this section.

  H. Surcharge Rate: The City, or its City Engineer, will determine the average total suspended solids (TSS) and biochemical oxygen demand (BOD) daily loadings for the average nonindustrial user. The City, or its engineer, will assess a surcharge rate for all industrial users discharging wastes with BOD and TSS strengths greater than the average nonindustrial user. Such users will be assessed a surcharge sufficient to cover the costs of treating such users' above normal strength wastes. Nonindustrial strength wastes are considered to be one hundred eighty seven (187) ppm BOD and two hundred forty three (243) ppm TSS.

    1. The City will review the user charge system as necessary to assure equity of the system and to assure that sufficient funds will be collected from the system to adequately operate and maintain the wastewater treatment works. (Ord. 01-2016, 7-5-2016)

  I. Manhole: When required by the engineer, the owner of any property served by a building sewer carrying industrial wastes shall install a suitable control manhole in the building sewer to facilitate observation, sampling and measurement of the waste. Such manhole, when required, shall be accessible and safely located and shall be constructed in accordance with the plans approved by the engineer. The manhole shall be installed by the owner at his expense, and shall be maintained by him so as to be safe and accessible at all times.

  J. Measurement Of Characteristics: All measurements, tests and analysis of the characteristics of water and wastes to which references are made in the above sections shall be determined in accordance with "Standard Methods for the Examination of Water and Sewage", and shall be determined at the control manhole provided for in subsection I of this section or upon suitable samples taken at said control manhole. In the event that no special manhole has been required, the control manhole shall be considered to be the nearest downstream manhole in the public sewer to the point at which the building sewer is connected.

  K. Special Agreement And/Or Agreements: No statement contained in this section shall be construed as preventing any special agreement or arrangement between the City and any industrial concern whereby an industrial waste of unusual strength or character may be accepted by the City for treatment, subject to payment therefor by the industrial concern. (Ord. 65-85, 6-3-1996)

  L. Information: The City may require a user of sewer services to provide information needed to determine compliance with this chapter. These requirements may include:

1. Wastewater discharge peak rate and volume over a specified time period.
2. Chemical analysis of wastewater.
3. Information on raw materials, processes and products affecting wastewater volume and quality.
4. Quantity and disposition of specific liquid, sludge, oil, solvent, or other materials important to sewer use control.
5. A plot plan of sewers of the user's property showing sewer and pretreatment facility location.
6. Details of wastewater pretreatment facilities.
7. Details of systems to prevent and control the losses of materials through spills to the Municipal sewer. (Ord. 01-2016, 7-5-2016)

**10-2-6: INSPECTORS:**
The engineer and other duly authorized employees of the City bearing proper credentials and identification shall be permitted to enter upon all properties for the purposes of inspection, observation, measurement, sampling and testing in accordance with the provisions of this chapter. (Ord. 65-85, 6-3-1996)

**10-2-7: PENALTY:**
   A. Notice Of Violation: Any person found to be violating any provision of this chapter shall be served by the City with written notice stating the nature of the violation and providing a reasonable time limit for the satisfactory correction thereof. The offender shall, within the period of time stated in such notice, permanently cease all violations. (Ord. 65-85, 6-3-1996)

   B. Misdemeanor: Any person who shall continue any violation beyond the time limit provided for in subsection A of this section shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined in the amount as specified in section 1-4-1 of this Code per each day of violation. (Ord. 01-2016, 7-5-2016)

   C. Liability For Expense, Loss Or Damage: Any person violating any of the provisions of this chapter shall become liable to the City for any expense, loss or damage occasioned the City by reason of such violation. (Ord. 65-85, 6-3-1996)

## ARTICLE A. PRETREATMENT REGULATIONS

SECTION:

**10-2A-1: General Provisions**

**10-2A-1-1: Purpose And Policy - POTW**

**10-2A-1-2: Administration**

**10-2A-1-3: Abbreviations**

**10-2A-1-4: Definitions**

**10-2A-2: General Sewer Use Requirements**

**10-2A-2-1: Prohibited Discharge Standards**

**12-2A-2-2: National Categorical Pretreatment Standards**

**10-2A-2-3: Site-Specific Limits**

**10-2A-2-4: Best Management Practices (BMPs)**

**10-2A-2-5: Confidential Business Information**

**10-2A-2-6: Dilution**

**10-2A-3: Pretreatment Of Wastewater**

**10-2A-3-1: Pretreatment Facilities**

**10-2A-3-2: Additional Pretreatment And Monitoring Requirements**

**10-2A-4: Notification And Reporting**

**10-2A-4-1: Industrial User Questionnaire**

**10-2A-4-2: Notification Of Change In Discharge**

**10-2A-4-3: Notification Of Hazardous Waste Discharge**

**10-2A-4-4: Report Of Potential Problems**

**10-2A-4-5: Authorized Signature For Reports**

**10-2A-5: Recordkeeping**

CITY 001483

10-2A-6: Slug Discharge Control

10-2A-7: Compliance And Enforcement

10-2A-7-1: Time For Compliance

10-2A-7-2: Additional Information

10-2A-7-3: Right Of Entry

10-2A-8: Administrative/Judicial Enforcement Remedies

10-2A-8-1: Notification Of Violation

10-2A-8-2: Suspension Of Service

10-2A-8-3: Administrative Order

10-2A-8-4: Administrative Penalty

10-2A-8-5: Judicial Enforcement Remedies

10-2A-9: Trucked And Hauled Waste

10-2A-9-1: Hauled Wastewater

10-2A-9-2: RV Disposal Stations

### 10-2A-1: GENERAL PROVISIONS:

**10-2A-1-1: PURPOSE AND POLICY - POTW:**
This article sets forth uniform requirements for industrial users ("IUs") of the publicly owned treatment works ("POTW") for the City of Glendive related to pretreatment. It is intended to enable the POTW to comply with its national pollutant discharge elimination system ("NPDES") permit from the Montana Department of Environmental Quality as well as all applicable State and Federal laws, including the Clean Water Act (33 United States Code [USC] section 1251 et seq.) and the General Pretreatment Regulations (title 40 of the *Code of Federal Regulations* [CFR] part 403). The objectives of this article are:

   A.   To prevent the introduction of pollutants into the POTW that will interfere with its operation;

   B.   To prevent the introduction of pollutants into the POTW that will pass through the POTW, inadequately treated, into receiving waters, or otherwise be incompatible with the POTW;

   C.   To protect both POTW personnel who may be affected by wastewater and sludge in the course of their employment and the general public;

   D.   To promote and protect the reuse and recycling of wastewater and sludge from the POTW; and

   E.   To enable the POTW to comply with its NPDES permit conditions, sludge use and disposal requirements, and any other Federal or State laws to which the POTW is subject.

This article shall apply to all IUs of the POTW. (Ord. 01-2016, 7-5-2016)

**10-2A-1-2: ADMINISTRATION:**
Except as otherwise provided herein, the POTW shall administer, implement, and enforce the provisions of this article. Any powers granted to or duties imposed upon the POTW may be delegated to a duly authorized Municipality employee. (Ord. 01-2016, 7-5-2016)

**10-2A-1-3: ABBREVIATIONS:**
The following abbreviations, when used in this article, shall have the designated meanings:

| | |
|---|---|
| BMPs | Best Management Practices |
| BOD | Biochemical oxygen demand |
| CFR | *Code of Federal Regulations* |
| CIU | Categorical industrial user |
| COD | Chemical oxygen demand |
| EPA | U.S. Environmental Protection Agency |
| gpd | Gallons per day |
| IU | Industrial user |
| mg/L | Milligrams per liter |
| NPDES | National pollutant discharge elimination system |
| POTW | Publicly owned treatment works |
| SIU | Significant industrial user |
| TSS | Total suspended solids |
| USC | United States Code |

CITY 001484

(Ord. 01-2016, 7-5-2016)

**10-2A-1-4: DEFINITIONS:**

Unless a provision explicitly states otherwise, the following terms and phrases, as used in this article, shall have the meanings hereinafter designated.

ACT OR THE ACT: The Federal Water Pollution Control Act, also known as the Clean Water Act, as amended, 33 USC section 1251 et seq.

AUTHORIZED REPRESENTATIVE OF THE IU: An "authorized or duly authorized representative" of an IU may be: Municipality designate or Wastewater Superintendent as the minimum supervisory level, to be charged with duties and responsibilities by this article. The term also means a duly authorized representative of the Wastewater Superintendent.

  A.  If the IU is a corporation:

    1.  The president, secretary, treasurer, or a vice-president of the corporation in charge of a principal business function, or any other person who performs similar policy or decision making functions for the corporations; or

    2.  The manager of one or more manufacturing, production, or operating facilities, provided the manager is authorized to make management decisions which govern the operation of the regulated facility including having explicit or implicit duty of making major capital investment recommendations, and initiate and direct other comprehensive measures to assure long-term environmental compliance with environmental laws and regulations; can ensure that the necessary systems are established or actions taken to gather complete and accurate information for control mechanism requirements; and where authority to sign documents has been assigned or delegated to the manager in accordance with corporate procedures.

  B.  If the IU is a partnership or sole proprietorship: a general partner or proprietor, respectively.

  C.  If the IU is a Federal, State, or local government facility: a director or highest official appointed or designated to oversee the operation and performance of the activities of the governmental facility, or their designee.

  D.  The individuals described in subsections A through C of this definition, may designate another authorized representative if the authorization is in writing, the authorization specifies the individual or position responsible for the overall operation of the facility from which the discharge originates or having overall responsibility for environmental matters for the company, and the written authorization is submitted to the City.

BEST MANAGEMENT PRACTICES OR BMPs: Schedules of activities, prohibition of practices, maintenance procedures, and other management practices to implement the prohibitions listed in 40 CFR part 403.5(a)(1) and (b) and section 10-2A-2-1 of this article. BMPs also include treatment requirements, operating procedures, and practices to control plant site runoff, spillage or leaks, sludge or waste disposal or drainage from raw materials storage or sector control programs to control pollutants from certain non-domestic sectors.

BIOCHEMICAL OXYGEN DEMAND OR BOD: The quantity of oxygen utilized in the biochemical oxidation of organic matter under standard laboratory procedures for five (5) days at 20 degrees centigrade (20°C), usually expressed as a concentration (e.g., mg/L).

CATEGORICAL INDUSTRIAL USER OR CIU: Any IUs subject to a categorical pretreatment standard or categorical standard.

CATEGORICAL PRETREATMENT STANDARD OR CATEGORICAL STANDARD: Any regulation containing pollutant discharge limits promulgated by EPA in accordance with sections 307(b) and (c) of the Act (33 USC section 1317) that apply to a specific category of IUs and that appear in 40 CFR chapter 1, subchapter N, parts 405 - 471.

CHEMICAL OXYGEN DEMAND OR COD: A measure of the oxygen required to oxidize all compounds, both organic and inorganic, in water.

CONTROL AUTHORITY: The term refers to:

  A.  The POTW if the POTW's Pretreatment Program has been submitted and approved in accordance with the requirements of section 403.11; or

  B.  The EPA if the POTW's Pretreatment Program has not been approved.

ENVIRONMENTAL PROTECTION AGENCY OR EPA: The U.S. Environmental Protection Agency or, where appropriate, the Regional Water Management Division Director, the Regional Administrator, or other duly authorized official of said agency.

INDIRECT DISCHARGE OR DISCHARGE: The introduction of any pollutant into the POTW from any non-domestic source regulated under section 307(b), (c) or (d) of the Act.

INDUSTRIAL USER OR IU: A source of indirect discharge.

INTERFERENCE: A discharge which, alone or in conjunction with a discharge or discharges from other sources, both:

  A.  Inhibits or disrupts the POTW, its treatment processes or operations or its sludge processes, use or disposal; and,

  B.  Therefore, is a cause of a violation of the City of Glendive's NPDES permit (including an increase in the magnitude or duration of a violation) or of the prevention of sewage sludge use or disposal in compliance with any of the following

statutory/regulatory provisions or permits issued thereunder, or any more stringent State or local regulations: section 405 of the Act; the Solid Waste Disposal Act, including title II commonly referred to as the Resource Conservation and Recovery Act (RCRA); any State regulations contained in any State sludge management plan prepared pursuant to subtitle D of the Solid Waste Disposal Act; the Clean Air Act; the Toxic Substances Control Act; and the Marine Protection, Research, and Sanctuaries Act.

LOCAL LIMIT: Specific discharge limits developed and enforced by the POTW upon industrial or commercial facilities (IUs) to implement the general and specific discharge prohibitions listed in 40 CFR 403.5(a)(1) and (b) and section 10-2A-2-1 of this article.

MEDICAL WASTE: Isolation wastes, infectious agents, human blood and blood products, pathological wastes, sharps, body parts, contaminated bedding, surgical wastes, potentially contaminated laboratory wastes, and dialysis wastes.

NONCONTACT COOLING WATER: Water used for cooling that does not come into direct contact with any raw material, intermediate product, waste product, or finished product.

POTW TREATMENT PLANT: That portion of the POTW which is designed to provide treatment (including recycling and reclamation) of Municipal sewage and industrial waste.

PASS THROUGH: A discharge which exits the POTW into waters of the United States in quantities or concentrations which, alone or in conjunction with a discharge or discharges from other sources, is a cause of a violation of any requirement of the City of Glendive's NPDES permit, including an increase in the magnitude or duration of a violation.

PERSON: Any individual, partnership, co-partnership, firm, company, corporation, association, joint stock company, trust, estate, governmental entity, or any other legal entity; or their legal representatives, agents, or assigns. This definition includes all Federal, State, and local governmental entities.

pH: A measure of the acidity or alkalinity of a solution, expressed in standard units.

POLLUTANT: Dredged spoil, solid waste, incinerator residue, filter backwash, sewage, garbage, sewage sludge, munitions, medical wastes, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand, cellar dirt, Municipal, agricultural and industrial wastes, and certain characteristics of wastewater (e.g., pH, temperature, flow, TSS, turbidity, color, BOD, COD, toxicity, or odor).

PRETREATMENT: The reduction of the amount of pollutants, the elimination of pollutants, or the alteration of the nature of pollutant properties in wastewater prior to, or in lieu of, a discharge of such pollutants into the POTW. This reduction or alteration can be obtained by physical, chemical, or biological processes; by process changes; or by other means, except by diluting the concentration of the pollutants, unless allowed by an applicable pretreatment standard.

PRETREATMENT REQUIREMENTS: Any substantive or procedural requirement related to pretreatment imposed on an IU, other than a pretreatment standard.

PRETREATMENT STANDARDS OR STANDARDS: Pretreatment standards shall mean prohibited discharge standards, categorical pretreatment standards, and local limits, including BMPs.

PROHIBITED DISCHARGE STANDARDS OR PROHIBITED DISCHARGES: Absolute prohibitions against the discharge of certain pollutants; these prohibitions appear in section 10-2A-2-1 of this article.

PUBLICLY OWNED TREATMENT WORKS OR POTW: Means a treatment works as defined by section 212 of the Act (33 USC section 1292), which is owned by a state or municipality (as defined by section 502(4) of the Act). This definition includes any devices and systems used in the storage, treatment, recycling and reclamation of Municipal sewage or industrial wastes of a liquid nature. It also includes sewers, pipes and other conveyances only if they convey wastewater to a POTW treatment plant. The term also means the municipality as defined in section 502(4) of the Act, which has jurisdiction over the indirect discharges to and the discharges from such a treatment works.

SEPTIC TANK WASTE: Any sewage from holding tanks such as vessels, chemical toilets, campers, trailers, and septic tanks.

SEWAGE: Human excrement and gray water (as from showers, dishwashing operations, sinks, baths, or washing machines).

SIGNIFICANT INDUSTRIAL USER OR SIU: All IUs subject to categorical pretreatment standards under 40 CFR 403.6 and 40 CFR chapter I, subchapter N; and

 A. Any other IU that:

  1. Discharges an average of twenty five thousand (25,000) gallons per day or more of process wastewater to the POTW (excluding sanitary, noncontact cooling water and boiler blowdown wastewater);

  2. Contributes a process wastestream which makes up five percent (5%) or more of the average dry weather hydraulic or organic capacity of the POTW treatment plant; or

  3. Is designated as such by the control authority on the basis that the IU has a reasonable potential for adversely affecting the POTW's operation or for violating any pretreatment standard or requirement (in accordance with 40 CFR 403.80(f)(6)).

SLUG LOAD OR SLUG DISCHARGE: Any discharge at a flow rate or concentration, which could cause a violation of the prohibited discharge standards in section 10-2A-2-1 of this article. A slug discharge is any discharge of a non-routine, episodic nature, including but not limited to an accidental spill or a non- customary batch discharge, which has a reasonable potential to cause interference or pass through, or in any other way violate the POTW's regulations, local limits or pretreatment requirements.

STORMWATER: Any flow occurring during or following any form of natural precipitation, and resulting from such precipitation, including snowmelt.

TOTAL SUSPENDED SOLIDS, SUSPENDED SOLIDS OR TSS: The total suspended matter that floats on the surface of, or is suspended in, water, wastewater, or other liquid, and that is removable by laboratory filtering.

WASTEWATER: Liquid and water-carried pollutants from residential dwellings, commercial buildings, industrial and manufacturing facilities, and institutions, whether treated or untreated, which are contributed to the POTW. (Ord. 01-2016, 7-5-2016)

**10-2A-2: GENERAL SEWER USE REQUIREMENTS:**

**10-2A-2-1: PROHIBITED DISCHARGE STANDARDS:**

   A.   General Prohibitions: No IU shall introduce or cause to be introduced into the POTW any pollutant which causes pass through or interference. These general prohibitions and the specific prohibitions in subsection B of this section apply to all IUs of the POTW whether or not they are subject to categorical pretreatment standards or any other national, State, or local pretreatment standards or requirements.

   B.   Specific Prohibitions: No IU shall introduce or cause to be introduced into the POTW the following pollutants:

     1.   Pollutants which create a fire or explosive hazard in the POTW, including, but not limited to, waste streams with a closed- cup flashpoint of less than one hundred forty degrees Fahrenheit (140°F) (60°C) using the test methods specified in 40 CFR 261.21;

     2.   Wastewater having a pH less than 5.0 or otherwise causing corrosive structural damage to the POTW or equipment;

     3.   Solid or viscous pollutants in amounts which will cause obstruction of the flow in the POTW resulting in interference. Solid or viscous pollutants shall not be discharged whole or ground by garbage grinders. This includes, but is not limited to ashes, cinders, sand, oil and grease from food service establishments, mud, straw, shavings, metal, glass, rags, feathers, tar, plastics, wood, underground garbage, paunch manure, hair and flesh, entrails, and paper dishes, cups, milk containers, etc.;

     4.   Pollutants, including oxygen-demanding pollutants (BOD, etc.), released in a discharge at a flow rate and/or pollutant concentration which, either singly or by interaction with other pollutants, will cause interference with the POTW;

     5.   Heat in amounts which will inhibit biological activity in the POTW resulting in interference, but in no case heat in such quantities that the temperature at the POTW treatment plant exceeds forty degrees centigrade (40°C) (104°F) unless the approval authority, upon request of the POTW, approves alternate temperature limits;

     6.   Petroleum oil, nonbiodegradable cutting oil, or products of mineral oil origin, in amounts that will cause interference or pass through;

     7.   Pollutants which result in the presence of toxic gases, vapors, or fumes within the POTW in a quantity that may cause acute worker health and safety problems;

     8.   Trucked or hauled pollutants, except at discharge points designated by the POTW in accordance with section 10-2A-9 of this article;

     9.   Noxious or malodorous liquids, gases, solids, or other wastewater which, either singly or by interaction with other wastes, are sufficient to create a public nuisance or a hazard to life, or to prevent entry into the sewers for maintenance or repair;

     10.   Wastewater which imparts color which cannot be removed by the POTW treatment plant, such as, but not limited to, dye wastes and vegetable tanning solutions, which consequently imparts color to the POTW treatment plant's effluent, thereby violating the City of Glendive's NPDES permit;

     11.   Wastewater containing any radioactive wastes or isotopes except in compliance with applicable State or Federal regulations;

     12.   Stormwater, surface water, ground water, artesian well water, roof runoff, subsurface drainage, swimming pool drainage, condensate, deionized water, noncontact cooling water, and unpolluted wastewater, unless specifically authorized by the City of Glendive;

     13.   Sludges, screenings, or other residues from the pretreatment of industrial wastes;

     14.   Wastewater causing, alone or in conjunction with other sources, the POTW treatment plant's effluent to fail toxicity tests;

     15.   Detergents, surface-active agents, or other pollutants that might cause excessive foaming in the POTW or receiving waters;

   16. Fats, oils, or greases of animal or vegetable origin in concentrations which could cause a problem to the collection system or the POTW (e.g., restricted flow in pipes, sewage backups, lift station operation issues, decreased treatment, etc.);

   17. Wastewater causing a reading on an explosion hazard meter at the point of discharge into the POTW, or at any point in the POTW;

   18. Any garbage that has not been properly shredded. Garbage grinders may be connected to sanitary sewers from homes, hotels, institutions, restaurants, hospitals, catering establishment or similar places where garbage originates from the preparation of food in kitchens for the purpose of consumption on the premises or when served by caterers. However, garbage grinders shall only be used to grind small amounts of garbage incidental to cleaning of plates, cookware, etc., and not to dispose of large quantities of waste. Waste must be scraped into a garbage can prior to cleaning;

   19. Unusual biochemical oxygen demand (BOD), chemical oxygen demand (COD), or total suspended solids (TSS) in quantities as to constitute a significant additional load on the POTW;

   20. Wastewater containing pollutants which are not amenable to transport, treatment or reduction in concentration by the POTW and POTW treatment plant processes employed, or are amenable to treatment only to such a degree that the POTW treatment plant effluent cannot meet the requirements of regulatory agencies having jurisdiction over discharge of effluent to the receiving waters;

   21. Wastewater which, by interaction with other wastewater in the POTW, releases obnoxious gases, forms suspended solids which interfere with the collection system, or creates a condition deleterious to structures and treatment processes;

   22. Wastewater causing two (2) readings on an explosion hazard meter at the point of discharge into the POTW, or at any point in the POTW of more than five percent (5%) or any single reading over ten percent (10%) of the lower explosive limit of the meter;

   23. Liquid wastes from chemical toilets, trailers, campers or other recreational vehicles which have been collected or held in tanks or other containers shall not be discharged into the POTW except at locations authorized by the City of Glendive to collect such wastes;

   24. Pollutants, substances, or wastewater prohibited by this subsection shall not be processed or stored in such a manner that they could be discharged to the POTW. (Ord. 01-2016, 7-5-2016)

**12-2A-2-2: NATIONAL CATEGORICAL PRETREATMENT STANDARDS:**
Categorical industrial users (CIUs) must comply with applicable categorical pretreatment standards found at 40 CFR chapter I, subchapter N, parts 405 - 471. In order to facilitate notification from the POTW to the control authority regarding discharges from CIUs, CIUs shall notify the City of Glendive at least ninety (90) days prior to discharge. CIUs also have additional sampling, reporting, and notification requirements to the control authority. (Ord. 01-2016, 7-5-2016)

**10-2A-2-3: SITE-SPECIFIC LIMITS:**
The POTW may establish local limits, additional site-specific pollutant limits, Best Management Practices, or additional pretreatment requirements when, in the judgment of the City of Glendive, such limitations are necessary to implement the provisions of this article, including the discharge prohibitions in section 10-2A-2-1 of this article. These additional limits shall be public noticed prior to implementation by the City of Glendive. (Ord. 01-2016, 7-5-2016)

**10-2A-2-4: BEST MANAGEMENT PRACTICES (BMPs):**
   A. The POTW may develop BMPs to implement the prohibitions of section 10-2A-2-1 of this article. BMPs shall be considered pretreatment standards and local limits for purposes of this article and section 307(d) of the Act.

   B. The POTW may establish specific sector control programs for industrial users to control specific pollutants, as necessary, to meet the objectives of this article. Pollutants subject to these sector control programs will generally be controlled using BMPs or by permits, as determined by the POTW. These sector control programs shall not limit the POTW's authority to inspect, sample, require reports, enforce or otherwise carry out its responsibility under this article.

   C. The specific sector control program BMPs and requirements shall be developed and documented in a policy, which shall be public noticed. Elements of a BMP-based sector control program may include, but are not limited to the following:

   1. Installation of appropriately-sized treatment;

   2. Requirements for prohibitions on certain practices or discharges;

   3. Requirements for the operation and maintenance of treatment equipment; and

   4. Procedures for compliance certification, reporting and records retention. (Ord. 01-2016, 7-5-2016)

**10-2A-2-5: CONFIDENTIAL BUSINESS INFORMATION:**
All records, reports, data or other information supplied by any person or industrial user as a result of any disclosure required by this article or information and data from inspections shall be available for public inspection except as otherwise provided in this section, 40 CFR section 403.14 and applicable Statutes of Montana law. These provisions shall not be applicable to any information designated as a trade secret by the person supplying such information. Materials designated as a trade secret may include, but shall not be limited to: processes, operations, style of work or apparatus or confidential commercial or statistical data. Any information and data submitted by the industrial user which is desired to be considered a trade secret shall have the words, "Confidential Business Information", stamped on each page containing such information. The industrial user must demonstrate to the satisfaction of the POTW that the release of such information would divulge information,

processes or methods of production entitled to protection as trade secrets of the industrial user.

Information designated as a trade secret pursuant to this subsection shall remain confidential and shall not be subject to public inspection. Such information shall be available only to officers, employees or authorized representatives of the POTW charged with implementing and enforcing the provisions of this article and properly identified representatives of the EPA and the Montana Department of Environmental Quality. Effluent data from any industrial user whether obtained by self-monitoring, monitoring by the POTW or monitoring by any State or Federal agency, shall not be considered a trade secret or otherwise confidential. All such effluent data shall be available for public inspection. (Ord. 01-2016, 7-5-2016)

**10-2A-2-6: DILUTION:**
No IU shall increase the use of process water, or in any way attempt to dilute a discharge, as a partial or complete substitute for adequate treatment to achieve compliance with a discharge limitation unless expressly authorized by an applicable pretreatment standard or requirement. The POTW may impose mass limitations on IUs who are using dilution to meet applicable pretreatment standards or requirements, or in other cases when the imposition of mass limitations is appropriate. (Ord. 01-2016, 7-5-2016)

**10-2A-3: PRETREATMENT OF WASTEWATER:**

**10-2A-3-1: PRETREATMENT FACILITIES:**
IUs shall provide wastewater treatment, as necessary, to comply with this article and shall achieve compliance prior to discharge. Any facilities necessary for compliance shall be provided, operated, and maintained at the IU's expense. Detailed plans describing such facilities and operating procedures shall be submitted to the POTW for review, and shall be acceptable to the POTW before such facilities are constructed. Acceptance by the POTW of any such facilities shall not be construed as a guarantee or agreement by the POTW that such facilities will achieve compliance with this article. The review of such plans and operating procedures shall in no way relieve the IU from the responsibility of modifying such facilities, as necessary, to produce a discharge acceptable to the POTW under the provisions of this article. (Ord. 01-2016, 7-5-2016)

**10-2A-3-2: ADDITIONAL PRETREATMENT AND MONITORING REQUIREMENTS:**
   A.   Whenever deemed necessary, the POTW may require an IU to restrict its discharge, designate that certain wastewater be discharged only into specific sewers, relocate and/or consolidate points of discharge, separate domestic wastestreams from non- domestic wastestreams, and impose such other conditions as may be necessary to protect the POTW and determine the IU's compliance with the requirements of this article.

   B.   The POTW may require any person discharging into the POTW to install and maintain, on their property and at their expense, a suitable storage and flow-control facility to ensure equalization of flow.

   C.   The POTW may require any person discharging into the POTW to install at the owner's or operator's own expense suitable monitoring facilities or equipment which isolates appropriate wastewater discharges into the wastewater system and facilitates accurate observation, sampling and measurement of discharges. The equipment shall be maintained in proper working order and kept safe and accessible without restriction to POTW personnel at all times. Where practical, the monitoring equipment shall be located and maintained on the industrial user's premises outside of the building.

   D.   IUs with the potential to discharge flammable substances may be required to install and maintain an approved combustible gas detection meter. (Ord. 01-2016, 7-5-2016)

**10-2A-4: NOTIFICATION AND REPORTING:**

**10-2A-4-1: INDUSTRIAL USER QUESTIONNAIRE:**
If the POTW deems it necessary to assure compliance with the provisions of this article, any IU of the POTW may be required to submit a wastewater discharge permit application, questionnaire, or other reports and notifications in a format and timeframe specified by the POTW. In cases where the pretreatment standard requires compliance with a BMP or pollution prevention alternative, the industrial user must submit documentation required by the POTW or the pretreatment standards to determine the compliance status of the industrial user. Any industrial user subject to this reporting requirement shall submit a completed report no later than thirty (30) days after receipt of the notification and appropriate forms. (Ord. 01-2016, 7-5-2016)

**10-2A-4-2: NOTIFICATION OF CHANGE IN DISCHARGE:**
All industrial users shall promptly notify the POTW in advance of any substantial change in the volume or character of pollutants in their discharge, including the listed or characteristic hazardous wastes for which the industrial user has submitted initial notification under 40 CFR section 403.12(p). Additionally, significant industrial users are required to notify the POTW immediately of any changes in their facilities affecting potential for a slug discharge. (Ord. 01-2016, 7-5-2016)

**10-2A-4-3: NOTIFICATION OF HAZARDOUS WASTE DISCHARGE:**
Industrial users shall notify the POTW, the EPA Regional Waste Management Division Director, and the State hazardous waste authorities in writing of any discharge into the POTW of any substance which, if otherwise disposed of, would be considered a hazardous waste under 40 CFR section 261. Each industrial user shall notify the POTW in advance of any substantial change to such discharge. The specific information required to be reported and the time frames in which it is to be reported are found at 40 CFR section 403.12(p). (Ord. 01-2016, 7-5-2016)

**10-2A-4-4: REPORT OF POTENTIAL PROBLEMS:**
   A.   In the case of any discharge, including, but not limited to, spills, accidental discharges, discharges of a non-routine, episodic nature, a non-customary batch discharge, a slug discharge or a discharge that may cause potential problems for the POTW, the industrial user shall immediately telephone and notify the POTW of the incident. This notification shall include:

CITY 001489

1. Name of the facility;
2. Location of the facility;
3. Name of the caller;
4. Date and time of the discharge;
5. Date and time discharge was halted;
6. Location of the discharge;
7. Type of waste;
8. Estimated volume of the discharge;
9. Estimated concentration of pollutants in the discharge;
10. Corrective actions taken to halt the discharge; and
11. Method of disposal, if applicable.

   B.   Within five (5) working days following such discharge, the industrial user shall, unless waived by the POTW in writing, submit a detailed written report describing the cause(s) of the discharge and the measures to be taken by the industrial user to prevent similar future occurrences. Such notification shall not relieve the industrial user of any expense, loss, damage, or other liability which might be incurred as a result of damage to the POTW, natural resources, or any other damage to person or property; nor shall such notification relieve the industrial user of any fines, penalties, or other liability which may be imposed pursuant to this article. (Ord. 01-2016, 7-5-2016)

**10-2A-4-5: AUTHORIZED SIGNATURE FOR REPORTS:**
All reports and questionnaires required to be submitted by the above provisions shall bear the signature of an authorized representative of the discharging entity and shall include the following certification statement as set forth in 40 CFR section 403.6(a)(2)(ii):

*I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to ensure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system or the persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of a fine and imprisonment for knowing violations.*

(Ord. 01-2016, 7-5-2016)

**10-2A-5: RECORDKEEPING:**
All records (including documentation associated with BMPs) shall be retained by the user for a minimum period of three (3) years, shall be made immediately available upon request of the POTW at any time during the three (3) year period or so long as actually retained. (Ord. 01-2016, 7-5-2016)

**10-2A-6: SLUG DISCHARGE CONTROL:**
   A.   Each industrial user shall provide protection from accidental discharges and slug loads of pollutants regulated under this article. Facilities to prevent the discharge of spills or slug loads shall be provided and maintained at the industrial user's expense.

   B.   The POTW may evaluate whether each industrial user needs a spill prevention and control plan or other action to control spills and slug discharges. The POTW may require an industrial user to develop, submit for approval, and implement a slug/spill plan or take such other action that may be necessary to control spills and slug discharges.

   C.   A slug/spill plan shall include, at a minimum, the following:

   1. Detailed plans (schematics) showing facility layout and plumbing representative of operating procedures;
   2. Description of contents and volumes of any process tanks;
   3. Description of discharge practices, including non-routine batch discharges;
   4. Listing of stored chemicals, including location and volumes;
   5. Procedures for immediately notifying the POTW of any spill or slug discharge. It is the responsibility of the industrial user to comply with the reporting requirements in section 10-2A-4 of this article.
   6. Procedures to prevent adverse impact from any accidental or slug discharge. Such procedures include, but are not limited to, inspection and maintenance of storage areas, handling and transfer of materials, loading and unloading operations, control of plant site runoff, worker training, building of containment structures or equipment, measures for containing toxic organic pollutants, including solvents, and/or measures and equipment for emergency response; and
   7. Any other information as required by the POTW. (Ord. 01-2016, 7-5-2016)

**10-2A-7: COMPLIANCE AND ENFORCEMENT:**

**CITY 001490**

**10-2A-7-1: TIME FOR COMPLIANCE:**
All existing IUs must come into compliance with the terms of this article upon the effective date. (Ord. 01-2016, 7-5-2016)

**10-2A-7-2: ADDITIONAL INFORMATION:**

   A.   If the POTW deems it necessary to assure compliance with the provisions of this article, any IU of the POTW may be required to submit a wastewater discharge permit application, questionnaire, or other reports and notifications in a format and timeframe specified by the POTW. These requirements may include, but are not limited to:

   1.  Wastewater discharge peak rate and volume over a specified time period;

   2.  Chemical analysis of wastewater;

   3.  Information on raw materials, processes, and products affecting wastewater volume and quality;

   4.  Quantity and disposition of specific liquid, sludge, oil, solvent, or other material important to sewer use control;

   5.  A plot plan of sewers on the IU's property showing sewer and pretreatment facility locations;

   6.  Details of wastewater pretreatment facilities;

   7.  Details of system to prevent and control the losses of materials through spills to the POTW; and

   8.  Signed certification by the authorized representative of the IU.

   B.   The POTW will evaluate the data furnished by the IU and may require additional information to determine compliance with the provisions of this article. The POTW may deny the request to discharge non-domestic wastewater to the POTW or allow discharge under conditions determined by the POTW to protect against pass through or interference.

   C.   The POTW may require IUs to install monitoring equipment as necessary, per section 10-2A-3 of this article. The facility's sampling and monitoring equipment shall be maintained at all times in a safe and proper operating condition by the IU at its expense. All devices used to measure wastewater flow and quality shall be calibrated to ensure their accuracy. (Ord. 01-2016, 7-5-2016)

**10-2A-7-3: RIGHT OF ENTRY:**
The POTW shall have the right to enter the premises of any IU to determine whether the IU is complying with all requirements of this article. IUs shall allow the POTW ready access to all parts of the premises for the purposes of inspection (including the use of digital photography to gather information), sampling, records examination and copying, and the performance of any additional duties. Denial of access shall constitute a violation of this article. (Ord. 01-2016, 7-5-2016)

**10-2A-8: ADMINISTRATIVE/JUDICIAL ENFORCEMENT REMEDIES:**

**10-2A-8-1: NOTIFICATION OF VIOLATION:**
When the POTW finds that an IU has violated, or continues to violate, any provision of this article or any other pretreatment standard or requirement, the POTW may serve upon that IU a written Notice of Violation. Within five (5) working days of the receipt of such notice, an explanation of the violation and a plan for the satisfactory correction and prevention thereof, to include specific required actions, shall be submitted by the IU to the City of Glendive. Submission of such a plan in no way relieves the IU of liability for any violations occurring before or after receipt of the Notice of Violation. If the plan for correction submitted by the IU is not satisfactory to the City of Glendive, the POTW may take further action, including potentially suspending service as provided for in section 10-2A-8-2 of this article.

Nothing in this section shall limit the authority of the POTW to take any action, including emergency actions or any other enforcement action, without first issuing a Notice of Violation. (Ord. 01-2016, 7-5-2016)

**10-2A-8-2: SUSPENSION OF SERVICE:**
The POTW may suspend water service and/or wastewater treatment service in order to stop an actual or threatened discharge which presents or may present an imminent or substantial endangerment to the health or welfare of persons, the environment, causes pass through or interference, causes the POTW to violate any condition of its NPDES permit, or for violations of this article. Any IU notified of a suspension of the water service and/or wastewater treatment service shall immediately stop or eliminate the discharge. In the event of a failure of the person to comply voluntarily with the suspension order, the POTW shall take such steps as deemed necessary including immediate physical severance of the sewer connection, to prevent or minimize damage to the POTW system or endangerment to individuals or the environment. (Ord. 01-2016, 7-5-2016)

**10-2A-8-3: ADMINISTRATIVE ORDER:**
When the POTW finds that an industrial user has violated, or continues to violate, any provision of this article, an individual wastewater discharge permit or order issued hereunder, or any other pretreatment standard or requirement, the POTW may issue an order to the industrial user responsible for the discharge directing that the industrial user immediately come into compliance or within a time specified by the POTW.

If the industrial user does not come into compliance within the time provided, sewer service may be discontinued unless adequate treatment facilities, devices, or other related appurtenances are installed and properly operated. Compliance orders also may contain other requirements to address the noncompliance, including additional self-monitoring and management practices designed to minimize the amount of pollutants discharged to the sewer. A compliance order may not extend the deadline for compliance established for a pretreatment standard or requirement, nor does a compliance order relieve the industrial user of liability for any violation, including any continuing violation during the time it takes the industrial

user to come into compliance. Issuance of a compliance order shall not be a bar against, or a prerequisite for, taking any other action against the industrial user. (Ord. 01-2016, 7-5-2016)

**10-2A-8-4: ADMINISTRATIVE PENALTY:**

   A.   When the POTW finds that an industrial user has violated, or continues to violate, any provision of this article, an individual wastewater discharge permit or order issued hereunder, or any other pretreatment standard or requirement, the POTW may fine such industrial user in an amount not to exceed five thousand dollars ($5,000.00) per day per violation. Such fines shall be assessed on a per-violation, per day basis. In the case of monthly or other long-term average discharge limits, fines shall be assessed for each day during the period of violation.

   B.   The POTW may, in addition to fines, collect charges to pay for damage to the POTW, fines issued to the POTW, and any other costs incurred by the POTW as a result of the IU's noncompliance.

   C.   A lien against the industrial user's property shall be sought for unpaid charges, fines, and penalties.

   D.   Issuance of an administrative fine shall not be a bar against, or prerequisite for, taking any other action against the industrial user. (Ord. 01-2016, 7-5-2016)

**10-2A-8-5: JUDICIAL ENFORCEMENT REMEDIES:**

   A.   Injunctive Relief: When the POTW finds that an industrial user has violated, or continues to violate, any provision of this article, and individual wastewater discharge permit or order issued hereunder, or any other pretreatment standard or requirement, the POTW may petition the Municipal Court for the issuance of a temporary or permanent injunction, as appropriate, which restrains or compels the specific performance of the order, or other requirement imposed by this article on activities of the industrial user. The POTW may also seek such other action as is appropriate for legal and/or equitable relief, including a requirement for the industrial user to conduct environmental remediation. A petition for injunctive relief shall not be a bar against, or a prerequisite for, taking any other action against an industrial user. (Ord. 01-2016, 7-5-2016)

**10-2A-9: TRUCKED AND HAULED WASTE:**

**10-2A-9-1: HAULED WASTEWATER:**

   A.   The POTW may prohibit the discharge of trucked/hauled septic tank waste, industrial waste, and RV waste to the POTW.

   B.   Trucked/hauled waste may be discharged into the POTW only at locations designated by the POTW, and at such times established by the POTW. Such waste shall not violate section 10-2A-2 of this article or any other requirements established by the POTW. The discharge of hauled waste is subject to all other requirements of this article. The POTW may require the following:

      1.   Septic tank waste haulers to obtain individual wastewater discharge permits.

      2.   The POTW may collect samples of each hauled load to ensure compliance with applicable pretreatment standards and requirements.

      3.   The POTW may require the industrial waste hauler to provide a waste analysis of any load prior to discharge.

   C.   Any person discharging septic tank waste and industrial waste must provide a waste-tracking form for every load. This form shall include, at a minimum, the name and address of the waste hauler (individual person and company), permit number (if applicable), truck identification, names and addresses of sources of waste, and volume and characteristics of waste. The form shall identify the type of industry, known or suspected waste constituents, and whether any wastes are RCRA hazardous wastes. (Ord. 01-2016, 7-5-2016)

**10-2A-9-2: RV DISPOSAL STATIONS:**

The POTW may allow RV disposal sites in its service area if the quality or quantity of the RV waste does not impact the POTW, including the collection system. The POTW will require RV disposal sites in the service area to ensure adequate controlled access to its disposal site including locked access, sign-in records for persons discharging from the RV, record keeping by the RV disposal site, and other information, as deemed appropriate by the City of Glendive. (Ord. 01-2016, 7-5-2016)

CITY 001492