Anthony M. Nicastro                                    The Honorable Timothy J. Cavan
TAYLOR NICASTRO BROWNE LLC
1501 14th Street West, Suite 200
Billings, Montana 59102
Tel: (406) 389-1986
Email: anicastro@montanacivildefense.com

*Attorney for Plaintiff*
*BNSF Railway Company*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>        Plaintiff,<br><br>v.<br><br>CITY OF GLENDIVE,<br><br>        Defendant. | No. CV 24-81-BLG-SPW-TJC<br><br>DECLARATION OF ANTHONY NICASTRO IN SUPPORT OF PLAINTIFF BNSF RAILWAY COMPANY'S MOTION TO EXCLUDE EXPERT TESTIMONY AND REPORTS OF DEFENDANT CITY OF GLENDIVE'S EXPERTS SCOTT EMERICK AND DAX SIMEK |

I, Anthony Michael Nicastro, pursuant to 28 U.S.C. § 1746, declare as follows:

1.     I am over the age of 18 years, have personal knowledge of the matters set forth in this declaration, and am competent to testify about them.

2.     I am an attorney with the law firm Taylor Nicastro Browne LLC, located in Billings, Montana. I currently represent the Plaintiff in this matter, BNSF

Railway Company ("BNSF"), against the Defendant in this matter, City of Glendive ("Glendive").

3.      On July 18, 2025, Glendive disclosed the expert report of Mr. Scott Emerick, which is attached as **Exhibit A**. In his report—which is barely over a page long—Mr. Emerick states that he was "asked to provide an opinion on the actions that the City of Glendive Public Works Department [took] on 2/16/2024 to stop and/or prevent the illicit wastewater discharge to the City of Glendive's sanitary sewer system." *See* Exhibit A at 5. Mr. Emerick notes that he reviewed a handful of documents, including "[a]ll photographs taken at the site of the incident," "[t]he test results taken from the manhole where the incident occurred," both parties' pleadings, all of the parties' written discovery through March 19, 2025, Glendive's Montana Department of Environmental Quality ("DEQ") permit, and the Glendive City Code. *See* Exhibit A at 7. He also states that his opinions are based on his "education, training, work history, and background."

4.      Mr. Emerick summarizes these documents as follows:

> The information that I reviewed described the observation of a fuel oil discharge in a City Of Glendive manhole (manhole[ ]#422) by [the] City of Glendive Public Works Department on February 16, 2024. On that day, the Public Works Department employees reported the observation of fuel oil discharge to the City of Glendive Public Works Director. The Director then instructed the City Of Glendive Public Works Department employees to fill the City of Glendive Public Works Department manhole (#422) with concrete to prevent the illicit discharge from

entering the City of Glendive Public Works Department
collection system and Publicly Owned Treatment Works.

*See* Exhibit A at 5. Based off this review, Mr. Emerick concludes that because
"[h]ydrocarbons, if allowed to enter the City of Glendive Publicly Owned Treatment
Works, could destroy the wastewater treatment process," thereby potentially causing
damage to Glendive's wastewater treatment plant and incurring fines from the
Montana DEQ, "the City of Glendive Public Works Director acted prudently and
reasonably when directing the City of Glendive Public Works Department
employees to plug the manhole (#422) with concrete." *See* Exhibit A at 5. Mr.
Emerick also notes that Glendive "complied with obligations under the Glendive
City Code sections" that he reviewed. *See* Exhibit A at 6.

5.    On July 18, 2025, BNSF disclosed the expert report of Mr. Al
Kostelnik, which is attached as **Exhibit B**. Mr. Kostelnik presented in his report
carefully evaluated opinions regarding, among other things, Glendive's obligations
under relevant sections of Glendive's City Code, Glendive's failure to properly
evaluate the presence of pollutants prior to severing BNSF's sewer connection, and
his own observations of BNSF's Glendive operations based on his experience as a
mechanical engineer with expertise including engineering design, implementation,
and testing of industrial fueling and wastewater treatment systems, his review of
documents and information, and his visit to the site.

6.    On August 18, 2025, Glendive disclosed in response to Mr. Kostelnik's

report the expert rebuttal report of Mr. Dax Simek, which is attached as **Exhibit C**.

Mr. Simek provides in his three-page rebuttal report brief contrary opinions to each

of Mr. Kostelnik's evaluations with conclusory responses. *See* Exhibit C at 5–7.

      7.     When evaluating whether Glendive had the authority to take emergency

actions without first providing notification to BNSF pursuant to Section 10-2A-8-1

of the Glendive City Code, Mr. Simek states the following:

> It is my opinion that [Glendive] acted reasonably in some
> form of "emergency action" (Defendant's Response to
> Plaintiff[']s First Interrogatories) based on a perceived risk
> of a hydrocarbon discharge into the public sanitary sewer
> system that a potential to impair or destroy the wastewater
> treatment process at [Glendive's] Wastewater Treatment
> Plant.

*See* Exhibit C at 6.

      8.     Mr. Simek also states that, because "samples can take days to get an

analysis completed and results returned, . . . [Glendive] staff would have had no idea

how long a potential hydrocarbon discharge had been occurring, or to what extent,

and acted reasonably to protect the treatment process at the [Glendive]'s Wastewater

Treatment Plan." *See* Exhibit C at 6.

      9.     Three of Mr. Simek's rebuttal opinions consist of only one single

sentence each:

> **Opinion No. 5 Rebuttal**
>
> A history of permit compliance provides a baseline of
> performance; however, it is no guarantee that future
> hydrocarbon discharges or contamination will not occur.

**Opinion No. 6 Rebuttal**

A history of regulatory compliance provides a baseline of performance; however, it is no guarantee that future hydrocarbon discharges or contamination will not occur.

**Opinion No. 7 Rebuttal**

The three flooding events that took 20 – 25 years prior to the events in question have no bearing on BNSF's actions in this particular instance.

*See* Exhibit C at 7.

10.    On September 24, 2025, I sent a Notice of Deposition and Commanded Production of Documents to Mr. Emerick, which is attached as **Exhibit D**. This Notice of Deposition commanded Mr. Emerick to produce on October 1, 2025, "Mr. Emerick's complete file for this case," including "documents prepared by, received from, or sent to Mr. Emerick," which in turn include "correspondence, invoices, summaries, memoranda, or similar materials he relied on in forming his opinions."

11.    On October 1, 2025, I deposed Mr. Emerick in Billings, Montana. Attached as **Exhibit E** are the relevant pages of the transcript of the deposition. Despite being commanded to do so, Mr. Emerick did not bring his file to the deposition.

12.    Mr. Emerick testified that he had reviewed the deposition testimony of Glendive's 30(b)(6) witness Frank Ceane, even though his expert report did not state that he reviewed any deposition testimony. Mr. Emerick also testified that he did not need to talk to any of the Glendive employees who personally inspected the manhole

at issue in this case, because he "had the report and their statements were in some of that material in the deposition—or whatever—of Frank." Glendive's counsel confirmed, however, that Mr. Emerick was not provided with a copy of Mr. Ceane's deposition testimony.

13.     Mr. Emerick also states in his report that, for the preparation of his report, he reviewed "[a]ll photographs taken at the site of the incident," "[t]he test results taken from the manhole where the incident occurred," the pleadings in this case, and both parties' discovery responses and document productions through March 19, 2025, as well as Glendive's DEQ permit and City Code. *See* Exhibit A at 7. As I pointed out in his deposition, BNSF produced roughly 100,000 pages of documents in this case. Mr. Emerick stated in his deposition that he only spent six hours "to go through everything and formulate a report," which included a review of only 100 or so documents.

14.     On October 2, 2025, I deposed Mr. Simek in Billings, Montana. Attached as **Exhibit F** are the relevant pages of the transcript of that deposition. Mr. Simek stated that he did review Mr. Ceane's testimony; however, he did not review the testimony of any Glendive employee who actually personally inspected the East Valentine manhole. Mr. Simek also noted that his report would have been different if the employees' testimony differed from Mr. Ceane's.

15.     The deadline for the initial expert witness disclosures was originally

June 20, 2025, with Glendive's damages experts due four weeks later on July 18, 2025. *See* Dkt. No. 15. The Parties agreed to informally extend the initial expert witness disclosure deadline to July 18, 2025 and extend subsequent expert disclosures four weeks as well.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on this 21st day of January, 2026.

By: _____

Anthony M. Nicastro

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Adam Warren
Keturah Shaules
MOULTON BELLINGHAM, P.C.
27 North 27th Street, Suite 1900
P.O. Box 2559
Billings, MT 59103
Adam.warren@moultonbellingham.com
Keturah.shaules@moultonbellingham.com

*Attorneys for Defendant*

TAYLOR NICASTRO BROWNE LLC

By: /s/ Anthony M. Nicastro
    Anthony M. Nicastro

*Attorneys for Plaintiff*
*BNSF Railway Company*