IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>CITY OF GLENDIVE,<br><br>　　　　　　Defendant. | CV 24-81-BLG-SPW-TJC<br><br>(Consolidated Case: CV 25-38-BLG-SPW)<br><br>ORDER ON BNSF'S MOTION FOR RECONSIDERATION |

BNSF Railway Company ("BNSF") moved for reconsideration of the Court's prior order consolidating *City of Glendive v. BNSF Railway Company*, No. CV 25-38-BLG-SPW (D. Mont.) (the "2025 Case") with *BNSF Railway Company v. City of Glendive*, No. CV 24-81-BLG-SPW-TJC (D. Mont.) (the "2024 Case"). (2025 Case, Doc. 40; 2024 Case, Doc. 78). Glendive filed a response opposing the Motion. (2025 Case, Doc. 42; 2024 Case, Doc. 80). Having reviewed the Motion and response, the prior briefing, and the current procedural posture of both matters, the Court finds reconsideration is warranted.

## I.　Background

### A.　Underlying Facts

BNSF operates a railyard in Glendive as a common carrier. (2024 Case, Doc. 20 at 2). Glendive issued BNSF a discharge permit for its wastewater pretreatment

plant in 1980, which BNSF operated until it shut down and decommissioned the facility in 2020. (*Id.*, Doc. 13 at 2). In December 2023, BNSF sought permission to add a new pretreatment facility to Glendive's sewer system, but Glendive denied the request in early 2024, citing "historical issues with BNSF," among other factors. (*Id.*).

In February 2024, Glendive filled a manhole near BNSF's Work Equipment Building—one of several BNSF facilities within city limits—with concrete, severing BNSF's sewer access. (2024 Case, Doc. 20 at 2–3). When BNSF asked Glendive to restore service, Glendive refused, first asserting BNSF had not shown the line was free of groundwater and later claiming BNSF had "failed to provide a sanitary line." (*Id.*, Doc. 13 at 2–3).

In April 2024, Glendive informed BNSF it would not allow reconnection to the sewer system, stating it needed "to take all necessary action to stop the contamination discharge into [Glendive's] sewer system by BNSF." (*Id.* at 3).

B.    *2024 Case*

On June 28, 2024, BNSF filed suit in this district, alleging that Glendive violated its City Code and acted negligently by filling the manhole with concrete and cutting off sewer service to the Work Equipment Building. (2024 Case, Doc. 1 at 4–6). BNSF seeks restoration of sewer access and damages for portable toilet rentals and pipeline damage. (*Id.*, Doc. 20 at 7). The operative claims are a City Code

2

violation, negligence arising from the sewer disconnection, and a due process violation related to Glendive's sewer-access procedures. (*Id.* at 5–8).

In its Preliminary Pretrial Statement, Glendive asserted it denied BNSF's permit request "[d]ue to concerns with the ecological balance, potential risks to treatment process, water quality, regulatory compliance, and historical issues with BNSF." (2024 Case, Doc. 13 at 2). Glendive further alleged that BNSF had been contaminating Glendive's sewer system and characterized this alleged contamination as the reason it filled the manhole. (*Id.*). In its Answer to the Amended Complaint, Glendive denied that the concrete caused an improper "physical severance of [BNSF's] sewer connection," and instead asserted the cement was necessary "to prevent the continuation of contamination coming from [BNSF's] building into [Glendive's] sewer system." (2024 Case, Doc. 20 at 4; *Id.*, Doc. 21 at 3).

### C.    2025 Case

On March 27, 2025, Glendive initiated the present action. (2025 Case, Doc. 1). Although an individual landowner was included as a plaintiff in the original complaint, she was not included in the Amended Complaint. (*Id.*, Docs. 1, 3). Following the Court's dismissal of several claims and Glendive's decision not to file an additional amended complaint, the remaining causes of action are negligence, public nuisance, private nuisance, and trespass. (*Id.*, Doc. 30).

Glendive alleges that BNSF caused "hundreds of thousands of gallons of diesel fuel and other toxic contaminants and hazardous substances to enter the soil, surface waters, groundwater, and [Glendive's] wastewater collection and treatment system." (*Id.*, Doc. 3 at 4). According to Glendive, this contamination migrated through soil and groundwater systems onto City property, causing environmental damage, diminished property values, and public health concerns. (*Id.* at 4–5).

### D.    Consolidation Order

On March 24, 2026, the Court ordered consolidation of the 2024 Case and the 2025 Case. (2025 Case, Doc. 31; 2024 Case, Doc. 70). Based on the parties' briefing, the Court emphasized that the actions involved identical parties, substantially similar factual and legal issues, and comparable procedural postures, and therefore concluded that any potential prejudice was outweighed by gains in judicial efficiency. (2025 Case, Doc. 31 at 5–7; 2024 Case, Doc. 70 at 5–7). Subsequently, the Court found good cause to grant BNSF leave to file a Motion for Reconsideration, which BNSF submitted on April 14, 2026. (2025 Case, Doc. 40; 2024 Case, Doc. 78).

## II.    Discussion

For the reasons explained below, the Court concludes that reconsideration is warranted and that, at this stage, the burdens of consolidation outweigh any potential benefits. Because the Court previously denied BNSF's Motion to Stay as moot in

light of its order granting Glendive's Motion to Consolidate, the Court also reconsiders the Motion to Stay on its merits.

### A.    Motion for Reconsideration

A federal district court with jurisdiction over a case "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (citation modified). This plenary authority is discretionary and not constrained by the limitations of Rule 59. *Id.* (citing *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)).

Local Rule 7.3 governs requests for leave to file motions for reconsideration, and courts in this district have applied that same standard to the motions themselves. *See Lauren v. Mont. State Univ.*, No. CV-17-62-BU, 2019 WL 5677794, at *1 (D. Mont. Nov. 1, 2019) ("Local Rule 7.3(b)(1) and (2) present the standard for a motion for reconsideration."). Under Local Rule 7.3, "[a] litigant must show that either (1) the facts or law are different from the facts or law previously presented to the court, and despite the exercise of reasonable diligence, the party did not know such facts or law; or (2) new facts arose or the law changed after the entry of the order." *Id.* (citing L.R. 7.3(b)(1)–(2)).

Courts in the Ninth Circuit further require the moving party to demonstrate "some valid reason why the court should revisit its prior order[,] and . . . facts or law

of a 'strongly convincing nature' in support of reversing the prior decision." *See, e.g., Bailey v. Sw. Mont. Drug Task Force*, No. CV 07-31-BU, 2008 WL 11415840, at \*5 (D. Mont. May 27, 2008) (citing *Mallard Auto. Grp., Ltd. v. United States*, 343 F. Supp. 2d 949, 952 (D. Nev. 2004)). A motion for reconsideration "may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

When BNSF moved to stay the 2025 Case and Glendive moved for consolidation, discovery in the 2024 Case had not yet closed, and neither action had reached the summary-judgment stage. Accordingly, Glendive's briefing emphasized that consolidation would "streamline[] discovery and pre-trial deadlines" to promote judicial economy. (2025 Case, Doc. 23 at 5).

After the parties completed briefing on their respective motions to stay and consolidate, however, the trajectories of the two actions materially diverged. As a result, even Glendive's original rationale for consolidation is no longer supported by the present posture of the cases.

In the 2024 Case, discovery has closed, and the parties have fully briefed cross-motions for summary judgment, along with a motion to strike and a motion in limine. By contrast, in the 2025 Case, no scheduling order has been entered, discovery has not begun, and no dispositive motions have been filed.

Because of the lapse of time between briefing on the stay and consolidation motions and the Court's order, the parties had no opportunity to address how the progression of the 2024 Case would affect the consolidation analysis. The present circumstances therefore "are different from the facts . . . [previously] presented to the [C]ourt." *See* L.R. 7.3. Moreover, BNSF could not have anticipated the degree of procedural divergence or the timing of the Court's ruling when it responded to the Motion to Consolidate. In light of these developments, the Court concludes BNSF has offered a "valid reason" to revisit the consolidation order, and that the changed procedural posture provides "strongly convincing" grounds to reverse the prior decision. *See Bailey*, 2008 WL 11415840, at *5.

B.    *Reconsidering the Motion to Consolidate*

Federal Rule of Civil Procedure 42(a) permits consolidation of actions that "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *In re Adams Apple, Inc.*, 829 F.2d 1484, 1487 (9th Cir. 1987). District courts have "broad discretion . . . to consolidate cases pending in the same district." *Invs. Rsch. Co. v. U.S. Dist. Ct. for Cent. Dist. Cal.*, 877 F.2d 777, 777 (9th Cir. 1989).

Consolidation generally promotes efficiency by avoiding duplicative discovery and evidentiary presentations, reducing cost and delay, and preventing the risk of inconsistent adjudications. *E.E.O.C. v. HBE Corp.*, 135 F.3d 543, 550–51 (8th Cir. 1998). Courts in this district have consolidated cases that "involve the same

set of facts, common questions of law, and pose a risk of inconsistent adjudication on the common factual and legal issues." *See, e.g., Bixler v. Jackson Nat'l Life Ins.,* No. CV 11-50-GF, 2012 WL 877025, at *1 (D. Mont. Mar. 14, 2012).

To determine whether consolidation is warranted, courts must "weigh[] the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States,* 743 F.2d 703, 704 (9th Cir. 1984). Consolidation is improper if it would "lead[] to inefficiency, inconvenience, or unfair prejudice to a party." *E.E.O.C.,* 135 F.3d at 551; Fed. R. Civ. P. 42(b).

Numerous courts have recognized that significant differences in procedural posture—such as one case nearing summary judgment while another has not yet begun discovery—may create prejudice sufficient to deny consolidation. *See Reed v. Kariko,* No. 3:20-cv-05580, 2020 WL 6781475, at *2 (W.D. Wash. Nov. 18, 2020); *see also Robert Kubiceck Architects & Assocs., Inc. v. Bosley,* No. CV-11-02112-PHX, 2012 WL 6554396, at *8 (D. Ariz. Dec. 14, 2012) (denying consolidation where defendants would be forced to await discovery and dispositive-motion practice in a newly filed action before resolving the earlier case). These courts conclude that even when some factors favor consolidation, the confusion, inefficiency, and prejudice stemming from markedly different procedural stages may

8

justify keeping actions separate. *See Reed*, 2020 WL 6781475, at *2; *Robert Kubiceck*, 2012 WL 6554396, at *8.

Although Glendive correctly notes that differing procedural stages do not *automatically* preclude consolidation, the authorities cited by both parties make clear that such differences must be evaluated on a case-by-case basis. *See, e.g., Internet Law Libr., Inc. v. Southridge Cap. Mgmt.*, 208 F.R.D. 59, 62 (S.D.N.Y. 2002). In *Internet Law Library*, for instance, consolidation was appropriate even though one action had engaged in eight months of discovery and the other had not yet begun, because discovery in the first case was not "so far along . . . that the benefits from consolidation would only run in one direction." *Id.*

On the other hand, in a case distinguished by *Internet Law Library*, consolidation was denied where discovery in one action was nearly complete while it had barely started in the other. *Garfinkle v. Arcata Nat'l Corp.*, No. 72 Civ. 5344, 1974 WL 389, at *2 (S.D.N.Y. Apr. 17, 1974). There, discovery had progressed far enough in one case that consolidation would have produced lopsided benefits and "result[ed] in greater delay rather than expedite matters." *Id.* Although there are many situations where "the differences . . . raised concerning discovery stages between . . . two cases are not enough to prohibit case consolidation," the disparity here is significant enough to warrant denial. *See Wolfe v. Hobson*, No. 2:16-cv-00471, No. 2:18-cv-00317, 2018 WL 6181404, at *3 (S.D. Ind. Nov. 26, 2018).

In reconsidering the Motion to Consolidate, the Court now finds that consolidation would undermine rather than promote judicial efficiency. The significant divergence between the two cases—particularly the completion of discovery and full summary-judgment briefing in the 2024 Case—creates a substantial risk of delay and prejudice in the 2024 Case if consolidation continues, regardless of any mitigating steps the Court might take.

First, vacating the existing scheduling order and cross-motions on summary judgment in the 2024 Case so that the matters can proceed together would be unduly burdensome. Reopening or extending discovery would stall resolution of the fully briefed dispositive motions.

Second, proceeding with separate operative complaints within a consolidated action would still slow the 2024 Case and create confusion about what has been discovered, argued, or decided in each matter. *See Northstar Marine, Inc. v. Huffman*, Nos. 13-0037, 14-0205, 2014 WL 4167019, at *4 (S.D. Ala. Aug. 21, 2014). Allowing the 2024 Case's cross-motions to stand while requiring the Court to wait for the 2025 Case to "catch up" on discovery and pretrial motions would likewise delay the earlier-filed action's path to summary judgment and trial. *See Robert Kubiceck*, 2021 WL 6554396, at *8.

Third, even consolidation solely for trial would introduce further delay and unnecessary complexity. Managing incompatible discovery records, differing

10

dispositive-motions schedules, and separate evidentiary records within a single consolidated action would not promote judicial economy. As in *Garfinkle*, 1974 WL 389, consolidation here would "result in greater delay rather than expedite matters."

These delays and the resulting inefficiency would also prejudice BNSF. Although the Court originally found no prejudice, BNSF's showing regarding the cases' divergent procedural posture demonstrates otherwise. As the plaintiff in the 2024 Case, BNSF would be disadvantaged by postponement of relief despite being the first to file. That prejudice is particularly unwarranted given the substantial resources the parties have already invested in moving the 2024 Case toward trial.

Although some factors that originally supported consolidation—such as overlapping facts, law, and parties—remain present, the balance now weighs against consolidation because of the inefficiencies and potential prejudice it would impose. To avoid delay and unnecessary expenses, any overlapping factual or legal issues can instead be managed through coordinated scheduling or by cross-referencing rulings where appropriate. Informal coordination between counsel, including shared discovery where feasible, is sufficient without formal consolidation.

Given how much time has passed since briefing on the Motion to Consolidate concluded and the significant developments in the interim, the status of the case today no longer favors consolidation. Regardless of any overlapping facts or legal theories, the goal of consolidation—to promote efficiency without undue delay or

11

prejudice—is no longer served.  The prior order is therefore vacated, and the cases shall no longer be consolidated.

### C.    Reconsideration of Motion to Stay

In addition to reconsidering consolidation, the Court is compelled to revisit BNSF's Motion to Stay.[1]  *See Santa Monica Baykeeper*, 254 F.3d at 885 (recognizing the Court's inherent authority to reconsider an interlocutory order). The Court previously denied the Motion as moot on the premise that consolidation had created a single proceeding, leaving nothing to stay.  (*See* 2025 Case, Doc. 31 at 2; 2024 Case, Doc. 70 at 2).  That rationale no longer applies.  *See Diaz v. First Am. Home Buyers Prot. Corp.*, 732 F.3d 948, 954 (9th Cir. 2013) (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 81 (2013) (Kagan, J., dissenting)) ("So assuming the case was live before—because the plaintiff had a stake and the court could grant relief—the litigation carries on, unmooted.").  Because the Court now determines that the cases must proceed separately, the concerns underlying BNSF's Motion to Stay are no longer moot.  The Court therefore turns to the merits of the stay request.

BNSF seeks a stay of the 2025 Case, primarily asserting that Glendive's

---

[1] Absent authority to the contrary, the Court is unpersuaded that ordering new briefing on BNSF's Motion to Stay would "be a more procedurally sound approach" than reviewing existing submissions, particularly because any new briefing would be "substantially identical" to what has already been submitted. (*See* Doc. 79 at 24). The Court therefore relies on the briefing previously filed in support of the Motion to Stay.

claims in that action should have been brought as compulsory counterclaims in the 2024 Case. The Court therefore begins by determining whether Glendive's claims in the 2025 Case constitute compulsory or permissive counterclaims in the 2024 Case, and then turns to whether a stay is warranted.

### 1.    Whether Glendive's Claims are Compulsory or Permissive

Federal Rule of Civil Procedure 13 classifies counterclaims as either "compulsory" or "permissive." A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). The Ninth Circuit applies the "logical relationship test," which asks "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit." *Pochiro v. Prudential Ins. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (citing *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978)).

Under this test, a counterclaim is compulsory only if it "arises from the same aggregate set of operative facts as the initial claim," meaning "that the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant." *Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013) (citing *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195–96 (9th Cir. 2005)). Any counterclaim that is not compulsory is permissive. Fed. R. Civ. P. 13(b).

In the 2024 Case, BNSF alleges that Glendive unlawfully blocked access to a sewer connection, giving rise to claims for violations of the City Code, negligence, and due process—all stemming from the alleged obstruction of sewer access. (*See* 2024 Case, Doc. 1). In the 2025 Case, by contrast, Glendive contends that BNSF has, for decades, contaminated soil and groundwater in the vicinity of that same sewer access point. (*See* 2025 Case, Doc. 3). BNSF argues that these environmental allegations should have been brought as compulsory counterclaims in the 2024 Case. (*See id.*, Doc. 12 at 1). The Court disagrees.

Here, the Court concludes that Glendive's claims in the 2025 Case are permissive, not compulsory, counterclaims, and therefore were not required to be asserted in the 2024 Case. Although Glendive referenced "historical issues with BNSF" and "continu[ed] . . . contamination coming from [BNSF's] building" as part of its justification for denying BNSF's permit and blocking sewer access, that limited overlap does not transform Glendive's claims into compulsory counterclaims. (*Id.*, Doc. 13 at 8; 2024 Case, Doc. 21 at 3).

As the Court previously noted in its now-vacated consolidation order, "Glendive's claims in the 2025 Case encompass a broader factual scenario than BNSF's claims in the 2024 Case." (2025 Case, Doc. 31 at 5; 2024 Case, Doc. 70 at 5). "In the 2025 Case, Glendive asserts broader environmental claims—of which

14

the sewer-access dispute is one component—alleging ongoing contamination from BNSF's operations." (2025 Case, Doc. 31 at 6; 2024 Case, Doc. 70 at 6).

While Glendive's allegations involve decades of industrial activity and distinct legal duties under environmental tort law, BNSF's claims concern a discrete, recent municipal obstruction. The fact that both cases involve contamination is inconsequential to the analysis. As Glendive emphasized, "[t]he temporal scope alone demonstrates different transactions—BNSF's case focuses on a three-month period in 2024, while Glendive's claims span decades of historical contamination and migration through environmental systems independent of and in addition to contamination from the sewer connection." (2025 Case, Doc. 19 at 10).

In short, the operative facts underlying Glendive's tort claims are the historical contamination events themselves, whereas the operative facts in the 2024 Case concern only the alleged obstruction of sewer access. Judicial economy and fairness do not support forcing the decades-long environmental issues and historical contamination disputes into the narrow, time-limited controversy over statutory rights, constitutional rights, and negligence presented in the 2024 Case. Doing so would expand the 2024 Case beyond its scope and risk confusion. Accordingly, Glendive's environmental-contamination allegations are permissive, not compulsory, counterclaims, and Glendive was not required to assert them in the 2024 Case.

### 2.   *Whether a Stay of the 2025 Case is Warranted*

A district court has broad discretion to stay proceedings when appropriate. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). A stay may be warranted where "resolution of issues in [another] proceeding would assist in resolving the proceeding sought to be stayed," or where doing so promotes "docket efficiency and fairness." *McCollough v. Minn. Laws. Mut. Ins.*, No. CV-09-95-BLG, 2010 WL 441533, at *4 (D. Mont. Feb. 3, 2010) (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110–11 (9th Cir. 2005)). When the outcome of one case may be affected by the resolution of an earlier-filed action, a court may stay the later case under the first-to-file rule or its inherent authority.

The "first-to-file" rule "allows a court to transfer, stay, or dismiss a later-filed suit in deference to an earlier-filed suit." *In re Bozic*, 888 F.3d 1048, 1055 (9th Cir. 2018). Courts have "an ample degree of discretion" in applying the rule. *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84 (1952)). In doing so, courts aim "to maximize economy, consistency, and comity." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239–40 (9th Cir. 2015) (citation modified). The relevant factors are: (1) the chronology of the lawsuits, (2) the similarities of the parties, and (3) the similarity of the issues. *Id.* at 1239.

Separately, a court's inherent authority to manage its docket provides an independent basis to stay proceedings. The power to stay is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254; *Collinson v. WRG Asbestos PI Tr.*, Nos. CV 23-22-M, CV 23-23-M, 2024 WL 4093314, at *1 (D. Mont. Aug. 2, 2024). This authority permits a stay pending resolution of independent proceedings that bear on the case. *Collinson*, 2024 WL 4093314, at *1. In evaluating such a request, courts consider: (1) any "possible damage which may result from the granting of a stay," (2) any "hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer*, 398 F.3d at 1110 (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)).

Here, BNSF asks the Court to stay the proceedings in the 2025 Case, arguing that Glendive's proper remedy is to seek leave to amend its answer in the 2024 Case. BNSF asserts that if such a motion were denied, Glendive would be "appropriately and equitably barred" from bringing its claims in the 2025 Case under res judicata principles. (2025 Case, Doc. 13 at 19). BNSF further contends that allowing the

17

2025 Case to proceed before resolution of the 2024 Case would force unnecessary expenditure of resources. (*Id.* at 21).

BNSF's request rests on its contention that Glendive's claims in the 2025 Case should have been brought as compulsory counterclaims in the 2024 Case. It relies on authority stating that "when claims in a later-filed action should have been filed as compulsory counterclaims in a prior pending action, 'in the absence of exceptional circumstances, the later-filed action should be stayed, transferred or dismissed with leave to plead the counterclaims in the prior pending action.'" (*Id.* at 17 (citing *Colortyme Fin. Servs., Inc. v. Kivalina Corp.*, 940 F. Supp. 269, 272 (D. Haw. 1996)). But the Court has already held that Glendive's claims are permissive, not compulsory counterclaims. Glendive was therefore entitled to bring them in a separate lawsuit. Because the claims are not compulsory, the Court is unpersuaded that the 2025 Case should be stayed to allow Glendive to seek leave to amend in the 2024 Case—particularly at this late stage.

Even aside from the compulsory-counterclaim issue, the criteria for a stay are not met. Under the first-to-file rule, although the chronology of the lawsuits and the similarity of the parties favor a stay, the similarity of the issues does not. Any overlap between the cases is limited—insufficient to render the claims compulsory and likewise insufficient to justify a stay. Glendive's environmental claims extend beyond the isolated incident that disrupted BNSF's sewer access. Thus, a stay under

18

the first-to-file rule would not "maximize economy, consistency, [or] comity." *See Kohn L. Grp.*, 787 F.3d at 1239–40.

Under the Court's inherent authority, the relevant factors also weigh against a stay. The potential hardship to Glendive is substantial: a stay would effectively prevent it from ever asserting its environmental claims, because leave to amend in the 2024 Case is unlikely at this stage. As the litigation has progressed, the inefficiency of a stay has only increased. Requiring Glendive to seek leave to amend in the 2024 Case would delay and complicate proceedings that have already completed discovery and are nearing resolution after cross-motions for summary judgment. Adding counterclaims now would also delay and complicate the 2024 Case. Although litigating both cases simultaneously imposes some burden, a stay would primarily create additional confusion. Indeed, many of BNSF's arguments against consolidation apply equally to its request for a stay and its suggestion that Glendive seek leave to amend. That is, a stay would not promote "docket efficiency and fairness." *See McCollough*, 2010 WL 441533, at *4.

The Court therefore concludes that a stay is not warranted.

## III.  Conclusion

Accordingly, IT IS HEREBY ORDERED that:

(1)    BNSF's Motion for Reconsideration (2025 Case, Doc. 40; 2024 Case, Doc. 78) is GRANTED. The Court's prior order consolidating the cases

and denying the Motion to Stay as moot (2025 Case, Doc. 31; 2024 Case, Doc. 70) is VACATED.

(2)   Upon reconsideration, Glendive's Motion to Consolidate (2025 Case, Doc. 22) is DENIED.  The Clerk of Court is directed to separate Case Nos. CV 24-81-BLG-SPW-TJC and CV 25-38-BLG-SPW and restore each action to its individual docket.  All future filings shall be made separately in each case.

(3)   Upon reconsideration, BNSF's Motion to Stay (2025 Case, Doc. 12) is DENIED.

(4)   Both cases shall remain referred to United States Magistrate Judge Timothy J. Cavan who will conduct all necessary hearings and submit to the undersigned proposed findings of fact and a recommendation for the disposition of all motions excepted from the magistrate judge's jurisdiction by 28 U.S.C. § 636(b)(1)(A).

DATED this ___19th___ day of May, 2026.

SUSAN P. WATTERS
United States District Judge

20