IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF GLENDIVE,<br><br>Defendant. | CV 24-81-BLG-SPW<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE |

Plaintiff BNSF Railway Company ("BNSF") brings this action against Defendant City of Glendive ("Glendive") seeking declaratory judgment and other relief related to BNSF's connection to Glendive's sewer system. (*See* Docs. 1, 20). Before the Court are BNSF's Motion for Partial Summary Judgment (Doc. 35), Glendive's Motion for Summary Judgment (Doc. 45), and BNSF's Motion to Strike or, Alternatively, for Leave to File a Surreply (Doc. 67). United States Magistrate Judge Timothy J. Cavan entered his Findings and Recommendations (Doc. 82) on August 4, 2026, recommending that this Court grant BNSF's Motion for Partial Summary Judgment in part and deny it in part, deny Glendive's Motion for Summary Judgment, and grant BNSF's Motion to Strike. Glendive timely filed an objection (Doc. 85), and BNSF responded (Doc. 87).

For the reasons stated herein, the Court adopts Judge Cavan's Findings and Recommendations in full, grants in part and denies in part BNSF's Motion for Partial

Summary Judgment, denies Glendive's Motion for Summary Judgment, and grants BNSF's Motion to Strike.

## I. Background

BNSF operates several buildings within Glendive's city limits, including its Work Equipment Building, which contains restroom facilities that had been connected to the city sewer system for decades. (Doc. 20 at 2; Doc. 37 at 1–2; Doc. 56 at 2). An underground line runs from the Work Equipment Building and connects to the Glendive sewer system via a manhole located at the intersection of Pearson Avenue and East Valentine Street (the "Manhole"). (Doc. 37 at 2–3; Doc. 56 at 3). Glendive utility workers have inspected this city-owned Manhole at least weekly since September 17, 2021. (Doc. 37 at 10–11; Doc. 56 at 12–13).

During an inspection on December 22, 2023, utility workers noticed a flow and a surface sheen in the Manhole, indicating the potential presence of hydrocarbons. (Doc. 37 at 11–16; Doc. 56 at 14–20; Doc. 13 at 2). In response, Glendive's Public Works Director, Frank Ceane, ordered workers to install a temporary hydro-cement plug in the Manhole to block the flow to Glendive's publicly owned treatment works. (Doc. 37 at 12–13; Doc. 56 at 15–16).

Glendive maintained its weekly inspections. On February 16, 2024, utility workers discovered that the hydro-cement plug was gone and fluid was flowing into the Manhole once again. (Doc. 37 at 14–15; Doc. 56 at 18–19; Doc. 13 at 2). Upon

learning of the renewed flow, Ceane directed city workers to pour concrete into the Manhole. (Doc. 37 at 16; Doc. 56 at 20–21). Glendive did not notify BNSF before installing either the plug or the concrete, nor did it contact BNSF after pouring the concrete. (Doc. 37 at 17; Doc. 56 at 21–22). Glendive's actions effectively severed the Work Equipment Building's connection to the municipal sewer system. (Doc. 37 at 16; Doc. 56 at 20). Consequently, BNSF filed this lawsuit, asserting three counts: Violation of City Code and Negligence (Count I); Declaratory Judgment (Count II); and Due Process Violation (Count III). (Docs. 1, 20).

## II. Legal Standard

### *A. Findings and Recommendations*

A party is entitled to de novo review of the findings and recommendations to which it specifically objects, and the court may accept, reject, or modify these portions in whole or in part. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). To trigger de novo review, an objection must "identify[] the parts of the magistrate's disposition that the party finds objectionable and present[] legal argument and supporting authority, such that the district court is able to identify the issues and the reasons supporting a contrary result." *Mont. Shooting Sports Ass'n v. Holder*, No. CV 09-147-M, 2010 WL 4102940, at *2 (D. Mont. Oct. 18, 2010). Accordingly, District of Montana Local Rule 72.3(a) provides that an objection must:

> (1) itemize each factual finding of the magistrate judge to which objection is made, identifying the evidence in the record the party relies on to contradict that finding; [and]
>
> (2) itemize each recommendation of the magistrate judge to which objection is made, setting forth the authority the party relies on to contradict that recommendation.

A party may not "merely restate arguments made before the magistrate." *Mont. Shooting Sports*, 2010 WL 4102940, at *2. Objections "are not a vehicle . . . to relitigate [the] case." *Hagberg v. Astrue*, No. CV-09-01-BLG, 2009 WL 3386595, at *1 (D. Mont. Oct. 14, 2009). Congress created magistrate judges to provide "additional assistance" to district courts facing rapidly increasing caseloads. *Thomas v. Arn*, 474 U.S. 140, 152 (1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 268 (1976)). Requiring a district court "to review the entire matter *de novo* because the objecting party merely repeats the arguments rejected by the magistrate" would defeat this intended efficiency. *Hagberg*, 2009 WL 3386595, at *1.

Portions of the findings and recommendations to which no party properly objects are reviewed for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists only if "the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

///

///

### *B. Summary Judgment*

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When making a summary judgment determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See id.* at 587.

## III. Discussion

As an initial matter, BNSF moved for summary judgment on Count II, its claim for Declaratory Judgment. (Doc. 35 at 1). Under this count, BNSF seeks an order requiring Glendive to restore its access to the city sewer system. (Doc. 20 at 7). Judge Cavan determined that summary judgment should be denied because BNSF failed to present facts establishing its entitlement to sewer access at this stage. (Doc. 82 at 25–26). Because no party objected to this recommendation, the Court

reviews it for clear error. Finding none, the Court adopts Judge Cavan's determination and denies summary judgment on Count II.

The Court next turns to Glendive's remaining objections. The majority of these objections are copied verbatim from Glendive's summary-judgment briefing and lack additional analysis. This strategy does not satisfy the requirement to lodge specific and proper objections. *See Mont. Shooting Sports*, 2010 WL 4102940, at *2. Therefore, the Court reviews each objection individually to determine whether it was properly raised and to apply the appropriate standard of review—either clear error or de novo. Specifically, the Court addresses Glendive's objections regarding: (1) the application of the public duty doctrine to BNSF's negligence claim; (2) whether BNSF's procedural due process rights were violated; and (3) the Motion to Strike.

*A. Negligence (Count I)*

Glendive moved for summary judgment on Count I, arguing it could not be held negligent because it owed no duty to BNSF under the public duty doctrine. (Doc. 45 at 1). Judge Cavan concluded that the doctrine was inapplicable because "Glendive took affirmative actions that, allegedly, directly injured BNSF." (Doc. 82 at 13). Glendive now objects, contending that Judge Cavan erroneously failed to analyze the special-relationship exception and apply the public duty doctrine. (Doc. 85 at 1).

*1. Affirmative Act*

First, Glendive objects to Judge Cavan's conclusion that disconnecting BNSF's sewer service constituted an "affirmative act" exempting Glendive from the public duty doctrine. (*Id.* at 3). Although Glendive's analysis is sparse on this topic, it sufficiently articulates a legal basis to challenge Judge Cavan's recommendation by questioning whether the supporting authorities are distinguishable. (*See id.*). Accordingly, the Court finds the objection is properly made and will review Judge Cavan's conclusion regarding the applicability of the affirmative act exception de novo.

The public duty doctrine shields municipalities "from liability for fail[ing] to adequately enforce general laws and regulations . . . intended to benefit the community as a whole." *Gatlin-Johnson ex rel. Gatlin v. City of Miles City*, 291 P.3d 1129, 1132 (Mont. 2012) (citation omitted). For liability to be imposed, the duty breached must be owed to the injured person as an individual, rather than owed to the public in general. *Massee v. Thompson*, 90 P.3d 394, 403 (Mont. 2004). Where the doctrine applies, the governmental entity owes no legal duty to the individual plaintiff, and a claim for negligence fails as a matter of law. *Kent v. City of Columbia Falls*, 350 P.3d 9, 13–14 (Mont. 2015).

The public duty doctrine exists primarily to protect governmental entities from liability for passive inactions or omissions related to enforcing laws of general

applicability. *Bassett v. Lamantia*, 417 P.3d 299, 307–09 (Mont. 2018). It does not automatically apply to every situation where a government entity is a defendant. *Gatlin-Johnson*, 291 P.3d at 1133. For instance, the doctrine does not apply to duties created by a government actor's affirmative acts. *Bassett*, 417 P.3d at 303. "Where the plaintiff claims he was *directly* injured by an officer's *affirmative* acts, the officer owes the plaintiff a legal duty to exercise the same care that a reasonable officer with similar skill, training, and experience would under the same or similar circumstances." *Id.* at 308. "The duty to behave as a reasonably prudent person does not simply disappear when an officer dons his or her uniform" or holds public office. *Renenger v. Montana*,426 P.3d 559, 567 (Mont. 2018).

Because "Glendive took affirmative actions that, allegedly, directly injured BNSF," Judge Cavan found that these actions created a specific duty to BNSF, making the public duty doctrine inapplicable. (Doc. 82 at 13). Glendive first objects that the case law underpinning the recommendation is inapposite because those decisions involved "police officers['] individual actions against a singular citizen." (Doc. 85 at 3).

Glendive is correct that a substantial number of Montana Supreme Court cases interpreting the public duty doctrine involve law enforcement officers. Indeed, Glendive cites *Massee* for the definition of the doctrine—a case arising directly from a sheriff's alleged negligence. (*Id.*; *see also* Doc. 46 at 9 (citing *Massee*, 90 P.3d at

403)). Historically, the doctrine served to shield law enforcement officers from liability for breaching their general duty to preserve the peace. *See Nelson v. Driscoll*, 983 P.2d 972, 978–82 (Mont. 1999); *Phillips v. City of Billings*, 758 P.2d 772, 774–76 (Mont. 1988) ("Courts . . . are wary to force police officers to choose between liability for failure to arrest, and liability for false arrest."); *see also South v. Maryland*, 59 U.S. 396, 401 (1856) (first recognizing the public duty doctrine where a plaintiff alleged a sheriff neglected to protect and defend him).

Montana jurisprudence, however, does not restrict the doctrine's application exclusively to law enforcement. *See, e.g.*, *Nelson v. Montana*, 195 P.3d 293, 302–03 (Mont. 2008) (applying the doctrine to state licensing of medical providers); *Prosser v. Kennedy Enters., Inc.*, 179 P.3d 1178, 1183–84 (Mont. 2008) (applying the doctrine to local government land-use decisions). Instead, the Montana Supreme Court has made clear that—regardless of whether the defendant is a police officer or any other "government entity or person"—the doctrine's applicability turns on whether the negligence claim is based on an "affirmative act" or an omission. *Bassett*, 417 P.3d at 307–09 (collecting cases). Glendive points to no authority suggesting that the doctrine or its exceptions operate differently depending on whether individual police officers are involved. Therefore, the Court is unpersuaded by Glendive's argument that Judge Cavan's supporting cases are inapposite.

Next, Glendive suggests that because its "actions were not directly taken solely to undermine BNSF, but rather to protect the entire public's sewer system in the City of Glendive," it is exempt from negligence liability. (Doc. 85 at 3). However, Glendive's subjective motive is irrelevant to whether a legal duty exists. It does not matter that Glendive's actions were ostensibly taken to protect the city's broader sewer system; the public duty doctrine does not dictate that any municipal action escapes liability so long as it is performed for the public good.

The doctrine's shield is far narrower than Glendive suggests. As BNSF correctly notes, Glendive's expansive interpretation "would give municipalities in Montana effective immunity to do whatever they want, whenever they want, to an individual party so long as they claim it is for the public benefit." (Doc. 87 at 13). Such an unchecked reading "would likely render the public duty doctrine unconstitutional." (*Id.* (citing Mont. Const. art. II, § 18 ("[C]ities, towns, and all other local governmental entities shall have no immunity from suit for injury to a person or property."))).

Upon de novo review, the Court agrees with Judge Cavan. Glendive's affirmative act of severing BNSF's sewer system access exempted Glendive from the protections of the public duty doctrine. Accordingly, the Court overrules Glendive's objection and adopts this portion of Judge Cavan's Findings and Recommendations. Further, as Judge Cavan stated, "the Court takes no position on

the merits of BNSF's negligence claims. Instead, the Court merely finds that Glendive has not shown that, under the public duty doctrine, it did not owe BNSF a legal duty." (Doc. 82 at 13).

*2. Special Relationship*

Second, the Court addresses Glendive's contention that Judge Cavan erred by "fail[ing] to apply the special relationship test when considering the applicability of the public duty doctrine." (Doc. 85 at 3). Glendive maintains that the public duty doctrine applies because no special relationship was ever created between Glendive and BNSF. (*Id.* at 4). In particular, Glendive argues that Judge Cavan failed to consider persuasive authority from other jurisdictions—such as *Schroeder v. Ely City Municipal Water Department*, 910 P.2d 260, 261–62 (Nev. 1996)—which purportedly applied the doctrine to disputes over continuous access to public utility services. (Doc. 85 at 3–4).

As an initial matter, Glendive's argument regarding the special relationship exception is lifted word-for-word from its summary-judgment briefing and therefore does not constitute a sufficient objection. (*Compare id.* at 3–5, *with* Doc. 46 at 9–11); *see also Mont. Shooting Sports*, 2010 WL 4102940, at *2. Accordingly, the Court reviews Judge Cavan's decision not to analyze the special relationship test for clear error and finds none. Under the public duty doctrine, a special relationship functions as an exception that creates a specific duty where one would otherwise not

exist. *Nelson*, 195 P.3d at 299–300. Here, Judge Cavan concluded that Glendive owed a duty to BNSF based on Glendive's own affirmative acts. (Doc. 82 at 13). Because Glendive's affirmative acts already exempted it from the protections of the public duty doctrine, Judge Cavan had no reason to analyze whether a special relationship provided an additional exception. Judge Cavan did not commit clear error.

*B. Due Process*

Next, BNSF moved for summary judgment on Count III, claiming that Glendive violated BNSF's due process rights by disconnecting it from the sewer system without warning. (Doc. 36 at 27–30). Judge Cavan agreed and concluded that (1) BNSF's access to Glendive's publicly owned treatment works was a constitutionally protected property interest, and (2) Glendive therefore violated BNSF's procedural due process rights by failing to provide notice and an opportunity to be heard. (Doc. 82 at 23).

*1. Protected Property Interest*

First, Glendive objects to Judge Cavan's conclusion that BNSF possessed a protected property interest in its connection to the municipal sewer system. (Doc. 85 at 5). Glendive contends that Judge Cavan's analysis "failed to account for . . . [clear] federal case law" establishing "that a property interest cannot arise in the context of a due process claim when the purported interest is subject to the

government's discretion." (*Id.*). In arguing that federal law "clear[ly]" supports its position, Glendive recites a series of rules and applications that exactly mirror its prior summary-judgment briefing. (*Compare id.* at 5–6, *with* Doc. 55 at 7–8, *and* Doc. 46 at 18–21).

In his Findings and Recommendations, Judge Cavan comprehensively analyzed Glendive's discretion under the City Code, drawing on Glendive's cited authorities as well as precedent from this district, other district courts, and the United States Supreme Court. (Doc. 82 at 15–23). Judge Cavan determined that Glendive's authority to disconnect active users is limited by specific provisions, rather than unfettered. (*Id.* at 22–23). For example, Judge Cavan found that Section 10-2A-8-2 permits the suspension of wastewater treatment only to stop a discharge that presents "an imminent or substantial endangerment" to public health or welfare. (*Id.* at 20). Similarly, Judge Cavan noted that actions under Section 10-2A-8-1 are explicitly predicated upon a finding that an industrial user has violated or continues to violate the City Code. (*Id.*). Based on his extensive, plain-language analysis of these provisions, Judge Cavan concluded that even in emergency situations, the City Code restricts Glendive's authority to sever connections to specific, enumerated circumstances. (*Id.* at 23).

Glendive's objection is improper because it largely recycles arguments from its prior briefing while ignoring Judge Cavan's statutory analysis. Rather than

engaging with Judge Cavan's reasoning or the analogous case law cited in the Findings and Recommendations, Glendive simply declares "there is no doubt that the language of the City Code gives [it] discretion" to take "any action" without notice. (Doc. 85 at 6–7).

As BNSF correctly observes, "Glendive raises no substantive objection to Judge Cavan's conclusion that there are non-discretionary conclusions that Glendive must reach before severing BNSF's sewer access." (Doc. 87 at 19). Instead, Glendive merely redirects the argument to the fact that actions may occasionally occur on an emergency basis. (*See* Doc. 85 at 6–7).

Because Glendive fails to identify record evidence or legal authority contradicting Judge Cavan's conclusions—and instead merely recycles its previous briefs—its objection does not trigger de novo review. The Court therefore reviews this portion of the Findings and Recommendations for clear error and finds none. As BNSF notes, "[t]he fact that suspensions may occur on an emergency basis under the City Code if these conditions are met does not mean that Glendive has [the type of absolute] discretion that defeats BNSF's property interest in that connection." (Doc. 87 at 19). Because Glendive has failed to provide any authority or evidence to undermine Judge Cavan's thorough reasoning, the Court adopts the Findings and Recommendations regarding BNSF's protected property interest.

*2. Notice and Opportunity to be Heard*

Because BNSF has established a protected property interest, the Court concurs with Judge Cavan that notice and an opportunity to be heard were constitutionally required. (*See* Doc. 82 at 23). Glendive's remaining objections regarding notice—that the City Code lacks a notice requirement and that BNSF had actual notice (*see* Doc. 85 at 7–9)—are unpersuasive. As Judge Cavan correctly concluded, the absence of a municipal notice provision does not diminish the independent requirements of the Due Process Clause. (Doc. 82 at 23–24). Furthermore, Glendive previously admitted it failed to provide notice to BNSF either before or after installing the hydro-cement plug or before the cement was poured. (Doc. 38-11 at 4, 6–7).

While they lack merit on their own, Glendive's notice arguments are also legally irrelevant because BNSF was independently denied the second, indispensable requirement of due process: a meaningful opportunity to be heard. Glendive does not object to Judge Cavan's finding that BNSF was denied an opportunity to be heard. (*See* Doc. 82 at 24; Doc. 85 (no mention of opportunity to be heard)). Accordingly, because it is undisputed that Glendive failed to afford BNSF due process, the Court overrules Glendive's objections regarding BNSF's procedural due process claim.

### *C. Motion to Strike*

Finally, BNSF filed a Motion to Strike following Glendive's reply brief in support of its Motion for Summary Judgment. (Doc. 67). In that reply, Glendive had indicated that a sample taken from the sewer pipe in the Manhole "months after the incidents in question" tested well above allowable limits for total petroleum hydrocarbons. (Doc. 63 at 3). Glendive attached an excerpt of these alleged lab results to its reply. (Doc. 63-1). In response, BNSF requested that the Court strike this newly introduced and unauthenticated evidence, disregard it when ruling on the summary judgment motions, or grant BNSF leave to file a surreply. (*See* Doc. 67). Judge Cavan recommended granting the Motion to Strike "to the extent that the Court will not consider this evidence in deciding the pending motions," concluding that the footnote evidence was "irrelevant to determination of the pending summary judgment motions." (Doc. 82 at 7).

Glendive objects to this recommendation, arguing that Judge Cavan erred by "fail[ing] to consider the undisputed evidence that significant and unsafe levels of hydrocarbons were being discharged from BNSF into [Glendive's] sanitary sewer system." (Doc. 85 at 2). Glendive contends this evidence is relevant to justify its emergency action. (*Id.* at 9). In support of this contention, Glendive recites several summary-judgment arguments word-for-word, asserting there is no dispute that a sheen was present on the discharge, that BNSF admits hydrocarbons were in the

surrounding ground, and that the discharge was contaminated with hydrocarbons rather than ordinary sewer waste. (*Compare id.* at 8–9, *with* Doc. 55 at 6–7).

Beyond restating these prior arguments regarding whether emergency action was justified, Glendive simply asserts it "believes it is worthwhile for the Court to be aware of the attached Sample Test Results." (Doc. 85 at 9). Glendive claims these later results "demonstrate that [its] fears are substantiated" and are "highly relevant." (*Id.*). Glendive fails, however, to provide any analysis of Judge Cavan's finding that emergency justification is irrelevant to the Due Process Clause claim. Because the objection lacks legal argument or supporting authority explaining why Judge Cavan's evidentiary ruling was incorrect, it is improper. *See Mont. Shooting Sports*, 2010 WL 4102940, at *2. Consequently, the Court reviews Judge Cavan's finding and recommendation regarding the Motion to Strike for clear error.

Reviewing for clear error, the Court finds none. As Judge Cavan concluded, Glendive's City Code limits how Glendive may sever an industrial user's sewer connection, even during an emergency. Accordingly, due process requires Glendive to provide constitutionally mandated notice and a hearing. This Court has already ruled that Glendive failed to provide BNSF with an opportunity to be heard either before or after severing its protected property interest in the sewer system. Therefore, subsequent testing results offered to justify an emergency action are legally irrelevant.

Regardless of what evidence might suggest hydrocarbons were present in the system—including lab results from months later—BNSF was entitled to due process protections that it never received. Accordingly, this evidence has no bearing on the issues presently before the Court. Judge Cavan did not commit clear error in granting the Motion to Strike and declining to consider the evidence.

## IV. Conclusion

Having reviewed de novo those aspects of Judge Cavan's analysis that were properly objected to, and having reviewed the remainder of his analysis for clear error, IT IS HEREBY ORDERED that Judge Cavan's Findings and Recommendations (Doc. 82) are ADOPTED in full.

IT IS FURTHER ORDERED that:

(1) BNSF's Motion for Partial Summary Judgment (Doc. 35) is GRANTED IN PART as to Count III and DENIED as to Count II.

(2) Glendive's Motion for Summary Judgment (Doc. 45) is DENIED.

(3) BNSF's Motion to Strike or, Alternatively, for Leave to File a Surreply (Doc. 67) is GRANTED to the extent that the Court will not consider the evidence BNSF objects to.

DATED this 28th day of September, 2026.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge